## REYNOLDS *v.* THE STATE.

No. 11000.  DECEMBER 16, 1935.

*Vance Custer* and *G. G. Bower,* for plaintiff in error.

BELL, Justice.   This case originated on an accusation filed on April 8, 1935.   The accusation charged the defendant with the offense of possessing whisky and other intoxicating liquors, and malt beverages.   The offense was alleged to have been committed

on March 30, 1935. The defendant demurred to the accusation, on three grounds: (1) that the provisions of the act of March 22, 1935 (Ga. L. 1935, p. 327), as to repeal of the law against the possession of whisky amounted to an unconditional repeal, in that they were not intended by the legislature to be dependent on the election provided for in the act; (2) that so much of the act as attempted to submit its subject-matter to the voters was unconstitutional and void, because in violation of the provision of the constitution of Georgia by which the power of legislation is vested in the General Assembly (Code of 1933, § 2-1822); and (3) that the possession of malt beverages is not an offense against the law of this State, since the passage and ratification of the malt-beverage act of March 23, 1935 (Ga. L. 1935, p. 73). The court overruled the demurrer, and the defendant excepted pendente lite. The trial resulted in a verdict of guilty. A motion for new trial, containing the general grounds, together with assignments of error on the charge of the court, was overruled, and the defendant excepted.

■ It is contended that the alcoholic beverage-control act of March 22, 1935, repealed the law by which it was made a criminal offense to have whisky in one's possession, and that such repeal was not dependent on the ratification of the act by the vote of the people. In other words, it is insisted that the act shows an intention to repeal the law against the possession of intoxicating liquors, regardless of the referendum; and that the only effect of the failure of the people to ratify the act was to prevent the holding of local-option elections in the several counties. We can not agree to this contention. Before the passage of the act of March 22, 1935, the possession of whisky was a penal offense in this State. Code of 1933, §§ 58-101, 58-201. When the act of 1935 is considered in its entirety, it is manifest that the legislature did not intend that any part of it should become effective as the law unless the people should ratify its provisions in the election held on May 15, 1935, in which election, according to a proclamation conceded to have been made by the Governor, a majority of the votes were cast against repeal. By way of demonstrating the correctness of this conclusion, certain portions of the act will now be considered. In the caption it is stated that one of the purposes of the act is "to provide for the holding of a special election to ratify or reject this act." Thus, the question to be submitted was not the ratification

or rejection of a portion of the act, but the whole act was the issue to be submitted. It is true that section 6 purports, without condition, to repeal the existing law against the possession of whisky and other intoxicating liquors, and that in other sections there are provisions which, if standing alone, would appear to be final, without out reference to a vote of the people; but the legislative intention must be gathered from the entire act, and not from isolated portions. Section 22 is in part as follows: "In the event this act should go into effect as provided in section 36 of the same, the ratification of such act shall not prevent any county in this State from voting for or against the issuance of permits in such county for the manufacture or wholesale or retail distribution of the alcoholic beverages, liquors, and distilled spirits named in this act, which election shall determine whether such county or counties shall have 'local option' or not. In the event this act shall not be ratified, then no such county or counties shall have the right to call any other election. If this act is ratified and such county shall desire to call a separate election, it may do so upon written petition signed by fifteen (15%) per cent. of the voters of any county qualified to vote for members of the General Assembly, which petition shall be presented to the ordinary, who shall call an election within 40 days from the date of the filing of such petition in his office, to determine whether or not permits may be issued by the State Revenue Commission as herein provided, for the purpose of manufacturing, and/or selling at wholesale or retail the alcoholic liquors and beverages named in this act. . . If at such election a majority of the qualified voters shall vote in favor of the licensed manufacture and sale of such alcoholic beverages in such county or counties, as herein provided, this act shall become effective in such county or counties after the expiration of 15 days from the declaration of the result, and it shall be legal for the State Revenue Commission to grant permits according to the terms of this act. If a majority of the qualified voters voting in such election shall vote against the granting of permits for the manufacture and/or sale of such alcoholic beverages, the manufacture and sale of such alcoholic beverages in any county or counties of this State shall be illegal, and no license therefor shall be granted. No subsequent election shall be held in any county of this State within two years after the date of the order of the ordinary declaring the result of the first elec-

tion as provided in this section, nor shall any subsequent election be held except upon a petition signed by twenty-five per cent. (25%) of the qualified voters of said county, to be determined by the ordinary from the registration list used at the last election for members of the General Assembly."

Section 36 is as follows: "It shall not be legal to hold any election in the several counties of this State, as provided in section 22 of this act, until a special election has been held as provided in this section. A special election is hereby called to be held in every county of this State on Wednesday, May 15, 1935, under the same rules and regulations as apply to elections for members of the General Assembly. The voters list used in such election shall be the registered voters list used in the last general election. At such special election there shall be submitted to the registered and qualified voters of this State, qualified to vote at the last general election, the ratification or rejection of this act. The ballots shall have written or printed thereon the words 'For Repeal' and the words 'Against Repeal.' Those desiring to vote in favor of the ratification of this act shall strike out the words 'Against Repeal,' and those desiring to vote against the ratification of this act shall strike out the words 'For Repeal.' The returns of said election shall be certified to the Secretary of State within three days after said election, and the Secretary of State shall immediately certify the number of votes 'For Repeal' and the number of votes 'Against Repeal' to the Governor. If a majority of those voting at said election vote 'For Repeal,' the State voting as a whole, the Governor shall by proclamation declare this act ratified by the people of the State of Georgia; and when so ratified, notwithstanding the result for the entire State shall be 'For Repeal,' it shall be then permissible for the several counties of the State to hold the elections provided for in section 22 of this act. If the State shall vote 'Against Repeal,' the Governor shall declare this act not ratified, and no further or other election shall be necessary in the several counties of this State." It is thus noticed that in both sections 22 and 36 the State election was to be held for the purpose of submitting the whole act, and not a portion of it, to the will of the people. Section 22 refers to the contingency of whether the "act" shall go into effect as provided in section 36, while in section 36 it is provided that an election shall be held for "the ratification or

rejection of this act," and that "if the State shall vote 'Against Repeal,' the Governor shall declare this act not ratified, and no further or other election shall be necessary in the several counties of this State." In view of the other provisions, the final clause that no further or other election shall be necessary in the several counties does not show, as contended, that the only effect of the State-wide vote against repeal was to cut off the right to local option elections in the several counties. So there was no merit in the first ground of the demurrer.

■ It is next contended that all power of legislation is vested exclusively in the General Assembly, and that so much of the act of March 22, 1935, as attempted to submit its ratification or rejection to a vote of the people was unconstitutional and void, because in violation of the constitutional provision as to the legislative authority. It is argued that the General Assembly had no power under the constitution to delegate its function to the people of the State as a whole; and that since the provision as to referendum was invalid, the act is in force as a complete statute emanating solely from the legislature, and should be construed as an absolute repeal of the previous law against the possession of intoxicating liquors. Cf. *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (66 S. E. 665) ; *Richter* v. *Chatham County,* 146 *Ga.* 218 (91 S. E. 35) ; *Green* v. *Atlanta,* 162 *Ga.* 641 (135 S. E. 84) ; *Johnson* v. *State,* 169 *Ga.* 814, 817 (152 S. E. 76). In the view which we take of the case, it is wholly unnecessary to decide the constitutional question raised. This is true for the reason that even if the General Assembly could not submit to the people the question whether or not the act should become a law, it is clearly apparent that there was no intention on the part of that body to put the act in force as a statute without a vote of the people, as provided by its terms. Assuming, therefore, that the referendum features were invalid, there was still no repeal of the previous law. If a statute is in part constitutional and in part unconstitutional, and the objectionable portion is so inseparably connected with the general scheme that, in the event it should be stricken, effect can not be given to the intention of the legislature, the result will be that the whole act fails, and no part of it can be considered as the law. *Bennett* v. *Wheatley,* 154 *Ga.* 591, 595 (115 S. E. 83). In the present case, there is no reason to suppose that the General Assembly would have

passed the act in question without the provision for a referendum; and so, even if it should be held that this proviso was unwarranted and futile, the courts would not be authorized to disregard the condition and to declare the act valid in spite of the failure of such condition. See, in this connection: Bartow v. Himrod, 8 N. Y. 483 (59 Am. D. 506); Re Municipal Suffrage to Women, 160 Mass. 586 (36 N. E. 488, 23 L. R. A. 113); Bradshaw v. Lankford, 73 Md. 428 (21 Atl. 66, 11 L. R. A. 582, 25 Am. St. R. 602)'; Mueller v. Thompson, 149 Wis. 488 (137 N. W. 20, 43 L. R. A. (N. S.) 339, Ann. Cas. 1913C, 774); Thomson v. Barnett, 344 Ill. 62 (176 N. E. 108, 76 A. L. R. 1044); 59 C. J. 639-647, §§ 205, 206; 6 R. C. L. 121-129, §§ 121-127. It follows that whether the act of 1935 failed to become a law either by reason of the negative vote of the people or from the invalidity of the provision for referendum, it is wholly nugatory as a repealing statute, and the previous law remained of force. In reaching this conclusion we have not overlooked the provisions of section 38, "that should any section or paragraph of this act be declared illegal or unconstitutional, . . no other section or paragraph shall be affected thereby, but the remaining provisions of this act shall have full force and effect." This section, like every part of the act, was inseparably connected with the referendum provisions, and fell with the whole, if it be true, as contended, that the latter provisions were invalid. In Arthur v. State, 148 Tenn. 434 (256 S. W. 437), the Supreme Court of Tennessee, speaking of a saving clause similar to that contained in section 38, supra, said: "Just what effect is to be given such clauses in acts of the legislature we need not determine. We think it clear, however, that they must not be construed so as to defeat what appears to be the paramount legislative intent. The legislature conditioned the life of the act before us upon the result of the election provided for. There can be no mistake about this. It would be a palpable contempt of the legislative will for us to strike out the election provision from the act and give effect to the act regardless of the election." See also 59 C. J. 647, § 207; Williams v. Standard Oil Co., 278 U. S. 235 (49 Sup. Ct. 115, 73 L. ed. 287, note).

Nothing said above is intended to decide or intimate that the portions of the act relating to the referendum were in violation of the constitution, as insisted. This we may assume, and do merely

assume in the present case, because even upon that theory the act would not amount to a repeal of the prior law. "A court will always abstain from passing upon the constitutionality of an act of the legislature if there be any other ground in the case upon which to rest its decision.". *McGill* v. *Osborne,* 131 *Ga.* 541 (2) (62 S. E. 811); *Standard Cigar Co.* v. *Doyal,* 175 *Ga.* 857, 860 (166 S. E. 434). There was no merit in the second contention presented by the demurrer.

■ It was also contended that the law against the possession of malt beverages was repealed by the act of March 23, 1935, which was likewise submitted to a popular vote, and was adopted in the election of May 15, 1935. The defendant relies upon this act as a valid statute, raising no question here as to the validity of the referendum provision. The accusation charged that the offense of possessing malt beverages was committed on March 30, 1935, but it was not filed until April 8, and the case was not tried until June 18, after the final adoption of the act relating to malt beverages. In these circumstances the defendant demurred to the accusation on the ground that after the passage of this statute there could be no prosecution for a violation of the previous law before its repeal. The court did not err in overruling this ground of demurrer. While the rule may be different in some other jurisdictions, it is the law of Georgia that "all crimes shall be prosecuted and punished under the laws in force at the time of the commission thereof, notwithstanding the repeal of such laws before such trial takes place." Code of 1933, § 26-103. See also *Crosby* v. *Courson,* 181 *Ga.* 475 (182 S. E. 590).

■ In the special grounds of the motion for new trial error was assigned on excerpts from the charge of the court. There was no merit in any of these assignments. The evidence authorized the verdict, and the court did not err in refusing to grant a new trial.  *Judgment affirmed. All the Justices concur.*

Russell, Chief Justice, concurs specially.