34408. CITY COUNCIL OF AUGUSTA v. MANGELLY et al.

34572. CITY OF HEPHZIBAH v. MANGELLY et al.

34658. CITY OF VALDOSTA v. NEWTON COUNTY et al.

34659. CITY OF COVINGTON v. NEWTON COUNTY et al.

34660. CITY OF DALTON v. NEWTON COUNTY et al.

34661. CITY OF REMERTON v. NEWTON COUNTY et al.

34662. CITY OF ROYSTON v. NEWTON COUNTY et al.

34663. CITY OF CANON v. NEWTON COUNTY et al.

34664. CITY COUNCIL OF AUGUSTA v. NEWTON COUNTY et al.

34665. CITY OF LAKE PARK v. NEWTON COUNTY et al.

34666. CITY OF HARTWELL v. NEWTON COUNTY et al.

34667. CITY OF HAHIRA v. NEWTON COUNTY et al.

34668. CITY OF HEPHZIBAH v. NEWTON COUNTY et al.

34669. TOWN OF OXFORD et al. v. NEWTON COUNTY et al.

34670. STRICKLAND et al. v. NEWTON COUNTY et al.

PER CURIAM.

These 15 lawsuits have been consolidated into a single appeal for consideration of the 1975 Local Option

Sales Tax Act, Ga. L. 1975, p. 984 (Code Ann. § 92-3447a.1), the constitutionality of which is again under attack. At the request of the Georgia General Assembly, (House Res. No. 102) we have accorded expedited status to these cases of public importance. We find the Act unconstitutional in its entirety, and void.

The plan of the Act allows a county, by referendum, to impose a one percent sales tax, the proceeds of which shall be divided among the county and all incorporated municipalities lying wholly or partially within it, on a population basis. In the second and subsequent years, the Act as drafted provided for rollbacks of certain ad valorem taxes within areas receiving the sales tax proceeds. The purpose of the Act was plainly to provide a measure of ad valorem tax relief both to county and city taxpayers.

This is the second major lawsuit challenging the constitutionality of various portions of the Act. In 1978, we decided *Martin v. Ellis,* 242 Ga. 340 (249 SE2d 23) (1978), which ruled unconstitutional the "differential rollback" portion of the Act, which allowed a rollback of county ad valorem property taxes only in the unincorporated portions of a county. *Martin v. Ellis* nevertheless ruled the remainder of the Act constitutional after the differential rollback provisions had been stricken. The effect of *Martin v. Ellis* was that county ad valorem tax rollbacks were compelled to be made throughout the county, including any municipalities located therein. Because the "distribution formula" of the Act grants certain proceeds of the tax to counties and certain proceeds to municipalities, and because the municipalities are required to roll back their own ad valorem taxes, the effect of *Martin v. Ellis* was that city ad valorem taxpayers received an ad valorem tax reduction produced by the city portion of the funds, and also a county ad valorem tax reduction, on a par with all other county residents, from the county portion of the funds.

It was against this background that the present lawsuits arose. In 1976 the tax was implemented in Richmond County, and in 1978, in Newton County. From these counties came the two main lawsuits here today: No.

34408, *City Council of Augusta v. Thomas Mangelly* (Richmond County), and No. 34658, *City of Valdosta v. Newton County*. In each suit, the original plaintiffs were taxpayers living within unincorporated areas of those counties who sought to prevent their counties from distributing any tax proceeds to the included municipalities. In the Richmond County suit, the trial court enjoined the distribution and collection of the tax, pending final determination. That suit was joined by certain Intervenors, who own property within the county's municipalities and who seek to compel distribution of tax proceeds to those municipalities. Numerous Intervenors also joined the Newton County suit, in which the trial court (Fulton Superior Court) found § 26A (e) (2) and § 26A (e) (3) of the Act (Code Ann. § 92-3447a.1 (e) (2) and (3)) unconstitutional, but upheld the remainder of the Act severing this invalid portion. The ruling thus directs that all tax proceeds shall go to Newton County and all Newton County taxpayers shall receive equivalent tax relief; municipal participation in the tax relief formula has been deleted entirely.

In both cases the appellants are the cities.

1. As an initial matter, it seems beyond serious dispute that it is a county tax, and not a state tax, which is involved here. Since under the Act a county has discretion whether to impose the tax, and since approval by a county referendum is required, it follows that not all counties will impose the tax. Thus, were this considered a state tax, there would be severe uniformity problems presented. Neither will the tax proceeds, in any significant amount, go into the state treasury to be expended for state purposes, as is required of state taxes by Code Ann. § 2-4703. This is plainly a county tax. See *Chanin v. Bibb County,* 234 Ga. 282, 287 (216 SE2d 250) (1975); *Blackmon v. Golia,* 231 Ga. 381, 384 (202 SE2d 186) (1973).

The central issue on this appeal is whether the Georgia Constitution is violated by the Act's scheme of allowing counties to tax and to distribute a portion of the tax proceeds to cities. Appellants here, seeking to uphold the Act, argue that under Code Ann. § 2-6201 such action is

authorized: "The General Assembly may authorize any county to exercise the power of taxation for any public purpose as authorized by general *law. . .*" (Emphasis supplied.) (We note that very similar language appears in Code Ann. § 2-6202.) Appellants argue that in the Act itself the General Assembly has expressly authorized taxation by participating counties for the joint benefit of counties and their cities, which is a public purpose.

We agree with appellees, however, that such a purpose for county taxation is not legitimate. The purposes for which a county may tax are listed in Code Ann. § 2-6202 (see also Code Ann. § 2-6102) and taxation by counties for the purpose of sharing the resulting revenue with cities does not appear in that list. It is true that the first paragraph of Code Ann. § 2-6202 additionally authorizes taxation for "such other public purposes as may be authorized by the General Assembly." (This is the language which is closely similar to that of Code Ann. § 2-6201.) The question, with respect to both Code Ann. §§ 2-6201 and 2-6202 is, is this county-city tax-sharing plan a public purpose for which the General Assembly may validly authorize counties to tax in the Local Option Sales Tax Act? To answer the question, we must look at the power of the state itself to tax.

The Georgia Constitution is a limitation upon the power of the General Assembly to tax *(Blackmon v. Golia,* supra, 231 Ga. at 382), and the Constitution requires that the General Assembly not tax except where express constitutional authorization has been granted. Code Ann. § 2-4703; *Wright v. Absalom,* 224 Ga. 6 (159 SE2d 413) (1968). The sole purposes for which the state itself may tax are listed in the Constitution—Code Ann. §§ 2-4701 and 2-4704. It is also the law of Georgia that express constitutional authorization is required to validate a tax levy by a creature of the state. *Agricultural Com. Authority v. Balkcom,* 215 Ga. 107 (109 SE2d 276) (1959). This follows, because the state may not do indirectly that which it cannot lawfully do directly. Thus, the General Assembly must have express constitutional authorization for its act in allowing a county to impose a tax for a particular purpose. *Chanin v. Bibb County,*

supra, 234 Ga. at 286.

For what purposes may the state authorize a county to tax? The answer must be found in the constitutional list of purposes for which the state itself may tax.

The list of purposes for which the state may tax (Code Ann. §§ 2-4701, 2-4704) is our only source of purposes of taxation for which the state may validly delegate to its creatures the power to tax. Moreover, though the purposes listed in Code Ann. § 2-4701 are capable of delegation, we conclude that the right of the state to tax in order to grant funds to municipalities (Code Ann. § 2-4704) is not capable of delegation to counties or to any other subdivision of the state. This conclusion follows because the purposes listed in Code Ann. § 2-4701 are primarily capable of being also county purposes involving the provision of services to county residents; but it can never be a valid county purpose to provide revenue to a municipality, because municipalities are not citizens of nor creatures of counties—they are an entirely different form of government.

It follows that the state may not grant to counties the right to tax and to give part of the proceeds to municipalities, and consequently this may not be "such other public purpose[s] as may be authorized by the General Assembly" within the meaning of Code Ann. § 2-6202 or the similar language of Code Ann. § 2-6201. It follows that the distribution formula provided for in § 26A(e)(2) and § 26A(e)(3) of the Act, Code Ann. §§ 92-3447.1(e)(2) and (3), is unconstitutional because it is for an improper purpose.

The resolution reached above moots argument concerning whether the distribution of county tax proceeds to cities violates the "gratuity" provision of the Georgia Constitution (Code Ann. § 2-1413.1), and also moots consideration of the equal protection and due process analyses of the Act.

*Nichols, C. J., Undercofler, P. J., Hall, Bowles and Marshall JJ., concur in Division 1. Jordan, J., concurs specially. Hill, J., dissents.*

2. The last question is whether the invalid parts of the Act may be severed, leaving the remainder to stand, or whether the entire Act must fall. The general rule was

stated in *Elliott v. State,* 91 Ga. 694, 696 (17 SE 1004) (1892). "When a statute cannot be sustained as a whole, the courts will uphold it in part, when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose. But if the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect cannot be given to the legislative intent, the rest of the statute must fall with it." See also *Reed v. Hopper,* 235 Ga. 298 (219 SE2d 409) (1975); *Murphy v. State of Georgia,* 233 Ga. 681 (212 SE2d 839) (1975); *Fortson v. Weeks,* 232 Ga. 472, 473-475 (208 SE2d 68) (1974).

The presence of a severability clause in the Act does not change the test. "It is generally held that a saving [severability] clause . . . is only an aid to construction, and is not an absolute command. It merely creates a presumption in favor of separability, and does not authorize the court to give to the statute an effect altogether different from that sought by it when considered as a whole. It 'in no way alters the rule that in order to hold one part of a statute unconstitutional and uphold another part as separable, they must not be mutually dependent upon each other.' Carter v. Carter Coal Co., 298 U. S. 238 (56 Sup. Ct. 855, 80 L. ed. 1160, 1190). Upon the general question as to the effect of such clauses, see *Reynolds v. State,* 181 *Ga.* 547 (2) (182 SE 917); *Dorsey v. Clark,* 183 *Ga.* 304 (188 S. E. 338); *Cone v. State,* 184 *Ga.* 316 (191 S. E. 250); Dorchy v. Kansas, 264 U. S. 286 (44 Sup. Ct. 323, 68 L. ed. 686); Williams v. Standard Oil Co., 278 U. S. 235 (48 Sup. Ct. 115, 73 L. ed. 287, note); 59 C. J. 647, § 207; 11 Am. Jur. 846, § 156." *Hoover v. Brown,* 186 Ga. 519, 528 (198 SE 231) (1938).

As the United States Supreme Court has written, the presence of a severability clause in an Act reverses the usual presumption that the legislature intends the Act to be an entirety, and creates an opposite presumption of separability. However, the severability clause does not change the rule that in order for one part of a statute to be upheld as severable when another is stricken as

unconstitutional, they must not be mutually dependent on one another. Carter v. Carter Coal Co., 298 U. S. 238, 313 (1936). Accord, *Martin v. Ellis,* supra, 242 Ga. at 245.

We are unable to see how the invalid portions of the county tax may realistically be severed. *Martin v. Ellis* has already voided the rollback provisions of the Act as drafted by the legislature. Were we to re-write the statute to eliminate city participation in county tax proceeds, as we have been requested to do, we would totally eliminate city participation in a portion of the Act which was clearly directed toward providing at least some substantial tax relief to municipal ad valorem taxpayers. That purpose of the legislature would thus be completely thwarted.

It is true that under a further section of this Act, Code Ann. § 92-3447a.1 (a) (f) cities are in some circumstances empowered to impose this tax without county participation. It is also true that nothing in this opinion would necessarily invalidate that tax scheme. However, we cannot conclude that the General Assembly would have wanted that part of the Act to survive the death of the remainder, because the original legislative scheme was for counties, by enacting the tax, to be able to preempt action by municipalities. This can no longer happen. Therefore, it follows that the Act must fall in its entirety.

*Nichols, C. J., Undercofler, P. J., and Hall, J., concur in Division 2. Hill, J., concurs in the result for the reasons stated in his written dissent. Jordan, Bowles and Marshall, JJ., dissent.*

*Judgments in Case Nos. 34408 and 34572 affirmed; judgments in Case Nos. 34658 through 34670 affirmed in part and reversed in part.*

ARGUED JANUARY 30, 1979 — DECIDED
FEBRUARY 8, 1979 —REHEARINGS
DENIED MARCH 28, 1979.

*Samuel F. Maguire, Stephen E. Shepard,* for appellant (Case Nos. 34408 and 34664).

*H. William Sams, Jr., Jay Sawilowsky, Pete Fletcher, Jr., Robert C. Daniel, Christopher G. Nicholson, Nickolas P. Chilivis, Samuel F. Maguire, Arthur K. Bolton, Attorney General, Randolph A. Rogers,* for appellees (Case Nos. 34408 and 34572).

*Christopher G. Nicholson,* for appellant (Case No. 34572).

*George T. Talley,* for appellant (Case No. 34658).

*Jerry D. Bouchillon,* for appellant (Case No. 34659).

*Erwin Mitchell, J. Raymond Bates, Jr., Susan W. Bisson,* for appellant (Case No. 34660).

*Fred H. Walker,* for appellant (Case No. 34661).

*Jerry N. Neal,* for appellant (Case No. 34662).

*Charles D. Strickland,* for appellant (Case No. 34663).

*James T. Bennett, Jr.,* for appellant (Case No. 34665).

*Joseph S. Skelton, Walter E. Leggett, Jr.,* for appellant (Case No. 34666).

*C. George Newbern,* for appellant (Case No. 34667).

*Christopher G. Nicholson,* for appellant (Case No. 34668).

*Samuel D. Ozburn,* for appellants (Case No. 34669).

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Don A. Langham, First Assistant Attorney General, H. Perry Michael, Senior Assistant Attorney General, James C. Pratt, Assistant Attorney General,* for appellant (Case No. 34670).

*Arthur K. Bolton, Attorney General, H. Perry Michael, Senior Assistant Attorney General, James C. Pratt, Assistant Attorney General, Oris D. Blackburn, Jr., Nickolas P. Chilivis, Randolph Rogers, Daniel T. Strain, Jr., W. D. Ballard, Samuel D. Ozburn, William Thomas Craig, W. E. Strickland, Ronald C. Harrison, Samuel F. Maguire, Erwin Mitchell, J. Raymond Bates, Jr., Susan W. Bisson, Charles D. Strickland, C. George Newbern, George T. Talley, James T. Bennett, Jr., Jerry N. Neal, J. Thomas Minor, III, Jerry D. Bouchillon, Christopher G. Nicholson, Joseph S. Skelton, Walter E. Leggett, Jr.,*

*Robert C. Daniel, Jr., Robert E. Ridgway, Jr.,* for Newton County et al.

*Walter E. Sumner, Andrew W. McKenna, Mitchel P. House, Jr., Lennie F. Davis, Eugene H. Polleys, Jr., Thomas N. Austin,* amici curiae.

JORDAN, Justice, concurring specially as to Division 1, and dissenting as to Division 2.

1. I agree with the holding in Division 1 of the opinion that the distribution formula provided for in the Act is unconstitutional, but not for the reasons set forth in the majority opinion. In my opinion it is unconstitutional because giving cities a portion of funds raised by a county levy violates the "gratuity" provision (Code Ann. § 2-1413.1) of the Constitution and also violates the equal protection provision (Code Ann. § 2-102) of the Constitution.

The flaw in the Act is not because the levy was for an "improper purpose," i.e., not a public purpose, but because the distribution formula results in the constitutional infirmities named above. I therefore agree with the result reached but for different reasons, and therefore concur specially in Division 1.

2. I think that the majority has made a grave error in holding that the severability clause in the Act is meaningless. The "legislative intent," which must be our criterion, could not have been more clearly or forcefully expressed than in the Act itself where it was stated that "The General Assembly hereby declares that it would have passed the remaining parts of this act if it had known that such part or parts hereof would be declared or adjudged invalid or unconstitutional." Ga. L. 1975, pp. 984, 994.

In view of this clearly expressed intent of the legislature this court should have allowed to stand the parts of the statute which are constitutional after the portions excised by our opinion in *Martin v. Ellis,* 242 Ga. 340 (249 SE2d 23) (1978) and by Division 1 of the opinion in this case. I therefore dissent as to Division 2 and would affirm the judgment of the trial court.

3. A dissenting opinion sets forth only the view of its author. Therefore, it can properly include suggestions or

advice which would be inappropriate or inadvisable in the opinion of the court. With this in mind I can speculate on some of the options confronting the General Assembly in the light of this court's opinion in this case and in *Martin v. Ellis,* supra.

Among these options are: (a) Take no action, leaving the situation as it existed prior to the Local Option Sales Tax of 1975; (b) Enact a local option sales tax for each county, providing that all of the funds generated will be used in a county-wide rollback of ad valorem taxes on all county ad valorem taxpayers; (c) In addition, enact a local option sales tax for each qualifying municipality, providing that all of the funds generated will be used in a city-wide rollback of ad valorem taxes on all city ad valorem taxpayers; (d) In lieu of (b) and (c), enact a state-wide levy of an additional one per cent sales tax providing for grants to counties and cities under an equitable distribution formula to be used for a rollback of ad valorem taxes.

In my opinion, either option (a), (b), or (c) or a combination thereof would (1) eliminate the uniformity problem (Code Ann. § 2-4603) in that the tax and the benefits would be equally applied to all the taxpayers in a taxing district, (2) eliminate the "gratuity" problem (Code Ann. § 2-1413.1) in that no county tax revenue would go to municipalities, and vice versa, and (3) eliminate the equal protection problem (Code Ann. § 2-102) in that all taxpayers would receive equal treatment applied uniformly within each taxing district.

HILL, Justice, dissenting.

In order to understand the majority's error it is necessary to understand the majority's reasoning, which is: Counties are not authorized by either Code Ann. §§ 2-6202 or 2-6102 to tax for the purpose of sharing the revenue with cities; although the state is authorized by Code Ann. § 2-4704 to share state revenue with cities, the state is not authorized to delegate its tax power derived from Code Ann. § 2-4704 to counties; the state is not authorized by Code Ann. § 2-4701 to tax for the purpose of sharing the revenue with cities; the state cannot do indi-

rectly what it cannot do directly; hence the state cannot authorize counties to tax for the purpose of sharing the revenue with cities.

The majority has gone 'round the mulberry bush without ever really focusing on the central object—the bush itself, which is Code Ann. § 2-6201 as augmented by § 2-6202.

Code Ann. § 2-6201 provides: "The General Assembly may authorize any county to exercise the power of taxation for any public purpose as authorized by general law or by this Constitution. . . ." After lengthy analysis the majority conclude that the General Assembly may authorize counties to tax for any public purpose authorized by the Constitution (that's what § 2-6201 succinctly says), but that the General Assembly cannot authorize counties to tax for public purposes authorized by general law unless also authorized by the Constitution. That is not what § 2-6201 says. By circumlocution the majority has obscured the critical words "by general law or." Code Ann. § 2-6201 is self-contained authority for the General Assembly to "authorize any county to exercise the power of taxation for any public purpose authorized by general law. . ."

Moreover, Code § 2-6202 authorizes counties to tax for 14 specified purposes, *plus* such other powers, authority and purposes as may be conferred by the General Assembly. The majority treat Code Ann. §§ 2-6201 and 2-6202 as if they were adopted as part of and in the spirit of the Constitution of 1877. The majority fail to recognize that these provisions were adopted in 1966 (Ga. L. 1966, p. 1066).

We have here a continuation of that overly strict constructionalism resulting in constitutional amendments upon constitutional amendments for which this court is famous. Here however the majority goes around the mulberry bush out of choice rather than constitutional necessity. I would not erect roadblocks in the General Assembly's search for tax relief where the Constitution does not require it.

I therefore dissent as to Division 1 of the majority opinion. Being unable to prevail on that issue, however, I must agree with Division 2 of the majority opinion. I

therefore concur in the judgment.

BOWLES, J., dissenting in part.

I concurred in the opinion of *Martin v. Ellis,* 242 Ga. 340 (249 SE2d 249) (1978), and concur in Division 1 of the cases here decided. To hold otherwise would be tantamount to saying the legislature is not bound by our constitutional limitations to tax, or else, as one dissent suggests, Code Ann. § 2-6201 is so broad that the provision "authorize any county to exercise the power of taxation for any public purpose authorized by general law..." is not limited. However, even after *Martin v. Ellis,* supra, and the above Division 1 of this opinion take effect, I am of the opinion that there remain several viable provisions of the Act.

The majority refuses to recognize that the Act is severable and thus strikes it down in its entirety. This causes disastrous results. If the remaining provisions were allowed to stand counties that have adopted the Act could continue to levy the tax and use the proceeds for the benefit of every citizen of the county uniformly; and taxes collected under the Act would not be considered as illegally collected, only their proper allocation and division with cities would be affected. As it now stands, the source of revenue from sales taxes will be abruptly terminated. The void created must be filled largely from ad valorem sources. Thus, the balance between tax sources is greatly imbalanced.

However, the most distasteful and disruptive result of Division 2 is that we conclude the legislature has no right to adopt a severability clause in one of its Acts. In the Act the majority now declares void in its entirety, the legislature specifically included a severability clause which reads (Ga. L. 1975, p. 984, Sec. 3): "In the event any section, subsection, sentence, clause or phrase of this Act shall be declared or adjudged invalid or unconstitutional, such adjudication shall in no manner affect the other sections, subsections, sentences, clauses or phrases of this Act, which shall remain in full force and effect, as if the section, subsection, sentence, clause or phrase so declared or adjudged invalid or unconstitutional were not originally a part hereof. The General Assembly hereby

declares that it would have passed the remaining parts of this Act if it had known that such part or parts hereof would be declared or adjudged invalid or unconstitutional."

We specifically held in *Martin v. Ellis,* supra, at p. 345, finding the roll back provision to be invalid,[1] that "the remainder of the Act is sufficient to preserve the legislative scheme." After the adoption of Division 1 of this opinion, and all taxpayers are fed out of the same spoon, the majority holds the legislative scheme is so disrupted that the remaining portions of the act cannot stand.

We said in *Rich v. State,* 237 Ga. 291, 303 (227 SE2d 761) (1976), "This court, furthermore, in considering severability, has always given great weight to legislative expression to this effect in the pertinent statutes." If the legislative intent can be effectuated the Act should stand. *Reed v. Hopper,* 235 Ga. 298 (219 SE2d 409) (1975). *Elliott v. State,* 91 Ga. 694 (17 SE 1004) (1893), which has been frequently cited in subsequent decisions on this question, did not involve an Act containing a severability clause. The court in striking the entire Act there said, "The courts cannot construct from a defective statute a law which the law making body did not intend to enact and *which it cannot be presumed it would have been willing to enact."* (Emphasis supplied.)

In the Act now under consideration, the legislature specifically states its intention in strong, precise and clear language. This court has to presume nothing. The intent is manifest. The Act having been so adopted, and approved by the governor, we have no authority to invade their

---

[1]The original Act resulted in the sales tax proceeds being apportioned between the county and certain municipalities in the county, based on population. Then city ad valorem taxes were rolled back on city property and county taxes were rolled back on property outside the cities. This resulted in reasonable equality of benefits. After *Martin v. Ellis,* supra, city property owners received two benefits, property owners outside municipalities received one.

province and hold "you don't mean what you said." In effect the majority holds a legislature has no right to adopt a severability clause in an Act. Therefore, I respectfully dissent.