40301, 40570. NIELUBOWICZ et al. v. CHATHAM COUNTY;
and vice versa.

HILL, Chief Justice.

Plaintiff is a resident and property owner in the unincorporated area of Chatham County. In 1973 the county created a special service tax district which consists of the unincorporated area of the county, and it levies a special service district tax on property located therein. Chatham County uses its proceeds from the local option sales tax, OCGA § 48-8-80 et seq. (Code Ann. 91A-4609 et seq.),[1] to reduce the millage rate of the general maintenance and operation tax which is levied countywide (i.e., is levied on property located in municipalities in the county and in the unincorporated area).

Plaintiff filed suit to enjoin Chatham County from using local option sales tax proceeds to reduce the countywide general maintenance and operation tax, and for other purposes. The trial court granted summary judgment for the county on the use of the sales tax proceeds to reduce the general maintenance and operation tax countywide and denied summary judgment for both parties on the remaining issues. The taxpayer appeals contending that the trial court erred in granting summary judgment for the county, and the county cross appeals claiming error in the denial of summary judgment on the remaining issues.

1. Plaintiff contends that the county is required by Art. 9, Sec. 2, Par. 3 (Code Ann. § 2-4903) (Const. 1983; former Art IX, Sec. IV,

---

[1] The local option sales tax act of 1975 was reenacted in 1979 after the 1975 act was found to be unconstitutional in *City Council of Augusta v. Mangelly,* 243 Ga. 358 (254 SE2d 315) (1979). The 1979 reenactment was upheld in *Taylor County v. Cooper,* 245 Ga. 251 (264 SE2d 193) (1980).

Par. II, Const. 1976 (Code Ann. § 2-6102)), and OCGA § 48-8-89 (a) (2) (Code Ann. § 91A-4608), to use the proceeds from the local option sales tax to reduce the millage rate in the special service tax district. OCGA § 48-8-89 (a) (2) (Code Ann. § 91A-4608) provides that, except for the one percent retained by the state to defray costs of administration, the proceeds of the local option sales tax shall be distributed to the governing authorities of qualified municipalities within the special district (see OCGA § 48-8-80 (Code Ann. § 91A-4609)) and to the governing authorities of the county whose geographic boundary is coterminous with the special district (see OCGA § 48-8-81 (Code Ann. § 91A-4601)) "for the purpose of assisting such political subdivisions in funding all or any portion of those services . . ." provided by such governing authorities pursuant to the constitutional provision cited above.

That constitutional provision, now Art. 9, Sec. 2, Par. 3 (Code Ann. § 2-4903), provides that "In addition to and supplementary of all powers possessed by or conferred upon any county, municipality, or any combination thereof, any county, municipality, or any combination thereof may exercise the following powers and provide the following services:. . . ." (Former Art. IX, Sec. IV, Par. II (Code Ann. § 2-6102), contained essentially the same language). There follows a list of a dozen or more powers and services, but the words "maintenance" and "operation" do not appear therein (except that the word "maintenance" appears in conjunction with streets and roads). The constitution provides further that such powers and services shall not be performed by a county within a city, and vice versa, except by contract or as provided by local or special law (former provision) or except by contract or as provided by law (new provision).

Plaintiff argues that because OCGA § 48-8-89 (a) (2) (Code Ann. § 91A-4608), supra, provides that local option sales taxes are to be used to assist political subdivisions in funding those services listed in the constitutional provision cited, which can only be performed by a county in its unincorporated area, the local option sales taxes must be used to reduce taxes in unincorporated Chatham County. We disagree.

At the outset we perceive a difference between the special district created by Chatham County (the unincorporated area) in 1973 and the special district created by the local option sales tax act. OCGA § 48-8-81 (Code Ann. § 91A-4601), supra, provides that 159 special districts (the number of counties in Georgia) are created and that the geographical boundaries of each county shall correspond with and be coterminous with the geographical boundary of one of the 159 special districts. Several sections of the local option sales tax act

refer to municipalities "within" the special district. See OCGA §§ 48-8-82, 48-8-84, 48-8-85, 48-8-86 and 48-8-89 (Code Ann. §§ 91A-4602, 91A-4604, 91A-4605, 91A-4606 and 91A-4608). See also *Taylor County v. Cooper,* supra, 245 Ga. at fn. 5. Thus, it appears that the special district created by the local option sales tax act is the entire county.

Next, without deciding whether local option sales taxes may be expended in exercising powers "possessed by or conferred upon" counties (see quote from Art. 9, Sec. 2, Par. 3 (Code Ann. § 2-4903), supra) by provisions other than the constitutional provision cited, we find that the General Assembly has expressly provided how the local option sales tax shall be applied to *taxes* (as opposed to expenditures). OCGA § 48-8-91 (a) (Code Ann. § 91A-4610) provides: "As a condition precedent for authority to levy the tax or to collect any proceeds from the tax authorized by this article for the year following the initial year in which it is levied and for all subsequent years, the county whose geographical boundary is coterminous with that of the special district and each qualified municipality therein receiving any proceeds of the tax shall adjust annually the millage rate for *ad valorem taxation of tangible property within such political subdivisions* as provided in this subsection. The governing authority of each such political subdivision shall compute the millage rate necessary to produce revenue from *taxation of tangible property in its respective political subdivision* which, when combined with other revenues reasonably expected to be received by the political subdivision during the year other than revenues derived from the tax imposed pursuant to this article, would provide revenues sufficient to defray the *expenses of the political subdivision* for the year. The millage rate so ascertained shall then be reduced by a millage rate which, if levied against *the tangible property within the political subdivision,* would produce an amount equal to the distribution of the proceeds of the tax imposed by this article which were received by the political subdivision during the preceding year. The tax bill of *each ad valorem taxpayer in the political subdivision* shall show in a prominent manner the millage rate first ascertained as provided in this subsection and shall show such millage rate reduced by the millage rate required to raise an amount of revenue equal to the distribution of the proceeds of the tax imposed by this article during the previous year. The remainder shall be the millage rate upon which each taxpayer's bill shall be based. . . ." (Emphasis supplied.)

Thus, the ad valorem tax reduction created by the local option sales tax is applicable to "tangible property within the political subdivision," not to property within the unincorporated area as the taxpayer here contends.

We find taxpayer's argument to be deficient in that it fails to take into account the statutory definition of "special district" and more particularly in that it fails to take into account the difference between allowable expenditures of tax funds, see *Salem v. Tattnall County,* 250 Ga. 881 (2) (302 SE2d 99) (1983), and the statutory ad valorem tax reduction formula which applies countywide. Moreover, countywide tax reduction was mandated by *Martin v. Ellis,* 242 Ga. 340 (249 SE2d 23) (1978), and taxpayer's argument is contrary to the constitutional requirement of uniformity involved in *Martin v. Ellis,* supra.

The trial court did not err in granting summary judgment to the county on its use of sales tax proceeds to reduce the county's general maintenance and operation tax countywide.

2. The county maintains that the trial court erred in denying the remainder of its motion for summary judgment. However, as we read the trial court's order, the court denied the county's motion for summary judgment on the ground that the county had failed to show that there was no genuine issue of material fact so as to entitle the county to judgment as a matter of law. We agree.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 7, 1984 —
REHEARING DENIED MARCH 28, 1984.

*Eichholz & Hunter, Thomas M. Hunter, Bruce A. Howe,* for appellants.

*Lee & Clark, Fred S. Clark,* for appellee.