46845. CITY OF WINDER v. COLLINS et al.
46846. BARROW COUNTY BOARD OF COMMISSIONERS et al.
v. TOWN OF AUBURN et al.
47033. COLLINS et al. v. TOWN OF AUBURN et al.
(385 SE2d 71)

SMITH, Justice.

There has been some confusion regarding which appellate court has jurisdiction over this case. *City of Winder v. Collins et al.,* No. 46845, was argued in the Court of Appeals before it was transferred to this Court where it was argued with the other two cases. The Supreme Court has jurisdiction over cases involving state revenue. *Collins v. State,* 239 Ga. 400, 403 (236 SE2d 759) (1977). In light of *City Council v. Mangelly,* 243 Ga. 358 (254 SE2d 315) (1979), this Court probably does not have initial jurisdiction of these cases, but due to the fact that we have jurisdiction over any case, we retain jurisdiction based upon the procedural posture of these cases.

The town of Auburn, the cities of Carl, Statham, and Winder, and Barrow County entered into a certificate of distribution in 1980 to distribute the proceeds of a local sales and use tax. In 1985 Auburn sought to renegotiate the certificate of distribution, apparently because the 1980 census indicated an increase in Auburn's population. When the attempt failed, Auburn entered into a certificate with Statham and forwarded it to the State Revenue Department (hereinafter referred to as the Department). Auburn advised the Department that it had withdrawn its consent from the 1980 certificate. The revenue commissioner rejected the certificate which was only signed by Auburn and Statham and refused to allow Auburn to withdraw its consent from the 1980 certificate.

Auburn filed an action in Fulton County Superior Court seeking to have the 1980 certificate declared null and void or, in the alternative, to have the court declare that Auburn had withdrawn from the certificate and was entitled to be treated as an "absent municipality." Auburn's motion for summary judgment was granted, and the trial court ruled that Auburn could withdraw from the certificate and receive an "absent municipality" share as of January 1, 1986. We affirm in part and reverse in part.

The joint county and municipal sales and use tax, OCGA § 48-8-80 et seq., was enacted to "authorize counties and certain municipalities to levy a local sales and use tax under certain conditions. . . ." Ga. L. 1975, p. 984. In order to impose a local sales and use tax the political subdivisions must call for a referendum election to decide upon

the imposition of the local taxes, the expense of which is to be borne by the county. More than one-half of the voters must agree to the proposed taxes. OCGA § 48-8-85. Once a referendum passes, the political subdivisions negotiate the percentage each will receive. If a qualified minority municipality[1] decides that it does not wish to be included in the certificate of distribution, then it can elect to be an "absent municipality." OCGA § 48-8-89 (b). The political subdivisions that submit the certificate of distribution to the revenue commissioner are allowed to determine what percentage of the remaining proceeds of tax available for distribution the "absent municipality" shall receive. However, in no event shall an "absent municipality" receive

> less than that proportion which each absent municipality's population bears to the total population of qualified municipalities within the special district multiplied by that portion of the remaining proceeds which are received by all qualified municipalities within the special district.

[OCGA § 48-8-89 (b).]

Because the act allows a qualified minority municipality to elect to be an "absent municipality," it protects the majority from a possible minority holdout which might otherwise prevent the enactment of the local sales and use tax after citizen approval. The act also protects the qualified minority municipalities by guaranteeing them a proportional share of the proceeds of the local taxes which their citizens approved and will be forced to pay even if the minority municipalities cannot reach an agreement with the majority.

The legislature clearly intended to protect all qualified municipalities. In fact, the legislature evidenced its commitment to this intent by providing that the authority to impose the tax within a district *terminates* if a municipality becomes qualified after a certificate of distribution has been submitted to the department and the submitting subdivisions do not file a new certificate of distribution within 60 days. OCGA § 48-8-89.1 (d).

Moreover, a municipality that becomes qualified after a certificate of distribution has been submitted to the revenue department is also guaranteed a proportional share of the taxes collected if it elects to be an "absent municipality." OCGA § 48-8-89.1 (c).

The General Assembly intended that all qualified municipalities share proportionally in the proceeds of the sales and use tax approved and paid for by their citizens. OCGA §§ 48-8-89 (b); 48-8-89.1 (c).

---

[1] A qualified minority municipality is a political subdivision with less than half of the aggregate population of all qualified municipalities. OCGA § 48-8-89 (b).

The legislative intent would be frustrated if a qualified municipality which, according to the latest official census figures, has increased in population could not elect to receive a proportional "absent municipality" share. If a growing qualified minority municipality is not allowed to elect to become an "absent municipality," then it might, in effect, be penalized merely because its population increased more rapidly than the majority municipalities. For example, should the majority refuse to renegotiate the certificate, the minority municipality's citizens would pay a higher proportion of the proceeds but the minority municipality would not receive a higher proportion of those same proceeds.

If the latest official census figures demonstrate that a qualified minority municipality's population has increased, and that municipality wishes to change the certificate of distribution, it must first attempt to renegotiate the certificate with the other political subdivisions. If negotiations fail, then the minority municipality must notify the revenue commissioner that it seeks to withdraw and be treated as an "absent municipality." The revenue commissioner must in turn notify the county. Subsequently, the political subdivisions may attempt to negotiate a new certificate of distribution. This new certificate of distribution must be filed with the commissioner within 60 days after the commissioner gives notice to the county. If the political subdivisions cannot agree on a new certificate, then the minority municipality must be treated as an "absent municipality" under the old certificate.

The effect of the above on these cases is as follows: The signers of the 1980 certificate of distribution have 60 days from the date of this opinion to negotiate a new certificate and file it with the department. If negotiations fail and a new certificate of distribution is not filed, then Auburn must be treated by the revenue commissioner as an "absent municipality" under the 1980 certificate.

The trial court correctly ruled that Auburn could withdraw from the certificate of distribution; however, we do not agree that it can collect the taxes retroactively from January 1, 1986. Auburn cannot begin to collect the new amount, if any, until a new certificate is filed or, if a new certificate is not filed, 60 days from the date of this opinion, whichever comes first.

*Judgment affirmed in part and reversed in part. Marshall, C. J., Clarke, P. J., Smith, Gregory, Bell and Hunt, JJ., concur, and Judge Eugene H. Gadsden concurs specially. Weltner, J., not participating.*

GADSDEN, Judge, concurring specially.

The majority's construction of OCGA § 48-8-80 et seq. has ensured that the citizens of a qualified minority municipality will reap the proportionate benefits of their tax dollars. The "absent munici-

pality" provision gives growing communities a safety valve with which they can seek relief from a certificate of distribution that no longer meets their needs. OCGA § 48-8-80 (b). At the same time the provision substantially protects the taxing ability of majority municipalities from minority municipality dissension.

Positive growth of a community should be encouraged in every instance. Therefore the qualified minority municipalities of Auburn and Statham will be allowed to flourish as "absent municipalities" should they elect this status after negotiations.

DECIDED OCTOBER 19, 1989 —
RECONSIDERATIONS DENIED NOVEMBER 21, 1989.

*Russell, Adamson & Stell, John E. Stell, Jr.,* for City of Winder.

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Harrison Kohler, Deputy Attorney General, Verley J. Spivey, David A. Runnion, Senior Assistant Attorneys General,* for Collins et al.

*William D. Healan, Jr.,* for Barrow County et al.

*Tennant, Davidson, Thompson & Sweeny, V. Lee Thompson, Glenn P. Stephens,* for Town of Auburn et al.