S92A0318. CITY OF ATLANTA v. COLLINS et al.
(417 SE2d 141)

FLETCHER, Justice.

This appeal raises the issue of which political subdivisions in a county must receive a lower percentage of revenue from the local option sales tax when a qualified municipality increases its percentage of the county's population according to the latest census.* We affirm

---

* OCGA § 48-8-80 defines a "qualified municipality" eligible for tax revenue as those

the trial court's ruling that the revenue should come from the share allocated to all the county's qualified municipalities.

In 1983, Fulton County and its qualified municipalities agreed to a distribution certificate that gave Fulton County 35 percent of the proceeds from the local option sales tax, the City of Atlanta 51.48 percent, and other municipalities a smaller percentage. After the 1990 census, six of the qualified municipalities had an increase in their population and elected to become absent from the certificate. The county and qualified municipalities failed to negotiate a new distribution certificate. The State Revenue Commissioner prepared a new certificate that left the county's portion of the tax proceeds at 35 percent and divided the remaining 65 percent pro rata among all qualified municipalities based on their population. The City of Atlanta successfully challenged the effective date of the new distribution formula. See *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991) (ruling that the effective date is January 1 of the next calendar year). After a hearing on the merits, the trial court approved the commissioner's method for determining the new distribution certificate. Atlanta appeals.

1. The Joint County and Municipal Sales and Use Tax Act establishes the initial procedure for distributing revenue to the county and qualified municipalities from a local option sales tax.

> Notwithstanding the fact that a certificate shall not contain an execution in behalf of one or more qualified municipalities within the special district, . . . the submitting political subdivisions shall, in behalf of the absent municipalities, specify a percentage of that portion of the remaining proceeds which each [absent] municipality shall receive, which percentage shall not be less than that proportion which each absent municipality's population bears to the total population of all qualified municipalities within the special district multiplied by that portion of the remaining proceeds which are received by all qualified municipalities within the special district.

OCGA § 48-8-89 (b). Under this formula, absent municipalities receive their pro rata share of the tax proceeds based on their percentage of the population of all the qualified municipalities in the county.

Relying on OCGA § 48-8-89, this court held that a qualified minority municipality may withdraw its consent from a distribution cer-

---

incorporated municipalities that impose a tax other than the local option sales tax and provide three of the following services: water, sewage, garbage collection, police protection, fire protection, or library services.

tificate after its population increases.[2] See *City of Winder v. Collins,* 259 Ga. 570 (385 SE2d 71) (1989). The municipality must attempt to renegotiate the certificate of distribution and notify the commissioner of its desire to be an absent municipality. "If the political subdivisions cannot agree on a new certificate, then the minority municipality must be treated as an 'absent municipality' under the old certificate." Id. at 572. Thus, the *Winder* decision established that a minority municipality that withdraws from a distribution certificate shall receive its proportionate share of tax proceeds received by all qualified municipalities in the county. The absent municipality's population increase must be based on the latest official decennial census. Id.

Consistent with both the statute and the *Winder* decision, we hold that the additional sales tax revenue that goes to an absent municipality when its population increases should come from the tax proceeds allocated to all the qualified municipalities. The statute apparently does not permit the county's percentage to be reduced except by agreement of the county's political subdivisions, by their failure to file a new certificate when required, or by a vote that terminates the tax. See OCGA §§ 48-8-89; 48-8-89.1; 48-8-89.3; 48-8-92. As a result, the percentage allocated to the county does not change when a minority municipality elects to become absent from the certificate. Cf. OCGA § 48-8-89.3 (b) (4) (1991 Supp.) (requiring no change in county's percentage in new distribution formula imposed because a qualified municipality has been omitted from a distribution certificate). If Atlanta desires an additional remedy as a majority city, it should seek a change in the statute from the General Assembly.

2. The statute also does not support Atlanta's contention that its population outside Fulton County should be counted in determining its pro rata share of the local option sales tax proceeds in the Fulton County special tax district. Only voters within the county that is conterminous with the special tax district are allowed to vote in the referendum elections to decide whether the tax shall be imposed or discontinued. OCGA §§ 48-8-85; 48-8-92. The legislature made clear that "only that portion of the population of each [absent] municipality which is located within the special [tax] district" should be considered to determine both each municipality's population and the total population of all qualified municipalities within the special district. See OCGA §§ 48-8-89 (b); 48-8-89.1 (b); 48-8-89.3 (b) (2) & (d). Therefore, only the portion of a city's population that resides within the special tax district is included when calculating a municipality's

---

[2] A minority municipality is a qualified municipality with "less than one-half of the aggregate population of all qualified municipalities located within the special district." OCGA § 48-8-89 (b).

pro rata share of the local option sales tax proceeds in that district. *Judgment affirmed. All the Justices concur.*

DECIDED JUNE 11, 1992.

*Michael V. Coleman, David D. Blum, Robert L. Zoeckler,* for appellant.

*Michael J. Bowers, Attorney General, David A. Runnion, Daniel M. Formby, Senior Assistant Attorneys General, John Tye Ferguson, Polatty & Sullivan, George J. Polatty, Jr., Michael E. Sullivan, Bovis, Kyle & Burch, John V. Burch, Reginald L. Carver, McNally, Fox, Cameron & Stephens, M. Van Stephens II, James A. Eidson,* for appellees.