S93A1978. DeKALB COUNTY SCHOOL DISTRICT et al. v. DeKALB COUNTY.

(440 SE2d 185)

SEARS-COLLINS, Justice.

The issue raised by this appeal is whether the appellant, the DeKalb County School District (the "District"), or the appellee, DeKalb County (the "County"), must pay for improvements to a county public road[1] leading to a DeKalb County school. We conclude the County is responsible for the county public road improvements.

The District purchased a site for building a school on Kingway Drive in DeKalb County. Kingway Drive is part of the DeKalb County public road system and can only be reached through its intersection with Shadow Rock Road. The District and the County agreed that the building of a school on Kingway Drive would necessitate improvements to Kingway Drive to make it safe for students and area residents, but disagreed as to which of them should pay for the road improvements. The improvements did not involve the portion of the road adjoining the school property and would require the purchase of rights of way to be titled in the County. The improvements included the widening of Kingway Drive at its intersection with Shadow Rock Road.

The school has now been built and is occupied. This litigation followed to determine whether the District or the County should pay for the improvements to Kingway Drive. During the litigation, the parties entered into a consent judgment that provided that the parties would make the road improvements in question, with each party

---

[1] All references to "road" in this opinion are to a public road that is part of a county road system. See OCGA § 32-4-1 (2). We are not referring to drives or roadways located entirely on school property, or on other non-public property, that are used for purposes of ingress and egress from improvements on the school property to a county public road, a municipal public road, § 32-4-1 (3), or a state highway, § 32-4-1 (1).

advancing 50 percent of the costs, and that the court would determine, based on the parties' claims, which party should pay for the costs of the improvements. At oral arguments the parties admitted that the improvements have now been completed. This appeal stems from the trial court's denial of the parties' motions for summary judgment. On appeal, each party contends that the other is required to pay for the improvements as a matter of law. We hold that the County must bear the costs of the improvements and reverse the denial of the District's motion for summary judgment.

1. We first address the District's contention that it cannot constitutionally expend its tax funds to pay for the road improvements. The District's contention is correct.

The 1983 Georgia Constitution, Art. VIII, Sec. VI, Par. I (b), provides that

> [s]chool tax funds shall be expended only for the support and maintenance of public schools, public vocational-technical schools, public education, and activities necessary or incidental thereto, including school lunch purposes.[2]

The issue presented is whether the road improvements are "necessary and incidental" to public schools and public education. Although we have held that this provision "vests broad powers in school districts to do those things properly determined to be necessary or incidental to public education," *Russell v. Fletcher*, 244 Ga. 854 (262 SE2d 138) (1979), this power must and does have its limits. Those limits can be discerned by examining the synergistic relationship that exists between the District and the County for providing services to citizens of the County.

The County has broad powers and duties to provide numerous services that benefit all the citizens of the County in many ways, see Art. IX, Sec. II, Pars. I and III of the 1983 Georgia Constitution, and has similarly broad power to tax and spend to provide those services, Art. IX, Sec. IV, Par. I of the 1983 Georgia Constitution; OCGA § 48-5-220. The District's authority, on the other hand, is principally aimed at providing educational opportunities to the young people of the County, thereby benefitting all of the citizens of the County. See Art. VIII, Sec. V, Par. I of the 1983 Georgia Constitution (school dis-

---

[2] Furthermore, OCGA § 20-2-411 provides that school funds
shall be used for educational purposes and may be used to pay the salaries of personnel and to pay for the utilization of school facilities, including school buses, for extracurricular and interscholastic activities, including literary events, music and athletic programs within individual schools and between schools in the same or in different school systems when such activities are sponsored by local boards of education as an integral part of the total school program, and for no other purpose.

tricts, through their boards of education, have authority to "establish and maintain public schools within their limits"). The District has the power to tax only "for the support and maintenance of education," Art. VIII, Sec. VI, Par. I (a), and, as we have seen, may only spend tax funds on matters necessary and incidental to the support of public schools and public education, id. at Par. I (b). The foregoing demonstrates that the District and the County generally must operate in two different spheres, with the District functioning principally to enhance the education of the youth of the County and the County functioning to provide a broad range of other services to the County's citizens. This division of responsibilities is some indication that the District's expenditures generally should not provide sources and benefits in areas reserved to the County.

These principles are consistent with the resolution of a similar case involving these same parties. In *Russell v. Fletcher*, supra, 244 Ga. 854, we resolved a dispute between the DeKalb County School District and DeKalb County concerning which of them should be required to expend funds "to provide school crossing guards for the purpose of ingress and egress to and from school property." Id. at 854. We held that because a county was not required to provide school crossing guards by any statute, because "the Constitution vests broad powers in school districts to do those things properly determined to be necessary or incidental to public education," id. at 854, and because a program to insure the safety of the children in crossing to and from school property was a necessary service, the District was authorized to pay for the crossing guards, id. at 855. Applying the principles discussed above to *Russell*, we see that the expenditure of school tax funds principally benefitted the education of the children by insuring that they could cross safely to and from school property once they had arrived there and did not stray into any area generally reserved to the County.

This case is a different matter. Here, we find that expending school tax funds for the road improvements would stray too far from the District's principal task of educating young people in favor of providing a benefit to all citizens that the County generally has the duty to provide. Although we conclude that the road improvements do benefit the District indirectly by insuring that a public road that school buses travel on will be safe, the improvements are not to the portion of the road adjoining the school property and required the improvement of a road belonging to the County and the purchase of rights of way for the County. Moreover, the safety concern presented by Kingway Drive was not in entering and leaving the District's school but in travelling on portions of the road that did not abut school property. Further, the danger was not limited to school children but to all citizens of the County, area residents and school chil-

dren alike. Finally, purchasing rights of way and improving county public roads fall within the sphere of services that the Constitution and laws generally assign to the County. See Art. IX, Sec. II, Par. III (a) (4) of the 1983 Constitution; OCGA § 32-4-41 (1) (county "shall plan, designate, improve, manage, control, construct, and maintain an adequate county road system and shall have control of and responsibility for all construction, maintenance, or other work related to the county road system"); § 48-5-220 (6) (county has power to tax for the maintenance of county roads).

In conclusion, because the road improvements not only stray from the District's principal responsibility of furthering the education of the County's children, but also provide a benefit to the citizens of the county in a way generally reserved to the County, we hold that the expenses are not "necessary and incidental" to public education and may not be paid for with school tax funds. If we were to reach a contrary holding, then school districts could arguably use precious educational funds to improve dangerous intersections and road conditions along all routes used by school buses.[3]

2. Having determined that the District may not constitutionally expend educational funds for the road improvements, any representation by the District's supervisor of construction to the contrary may not bind the District to pay for the improvements. See *Chatham Assn. of Educators v. Bd. of Public Education*, 231 Ga. 806, 808 (204 SE2d 138) (1974).

3. Our holdings in Divisions 1 and 2, supra, moot several other arguments made by the District regarding why the County should be required to pay for the road improvements.

*Judgment reversed. All the Justices concur.*

FLETCHER, Justice, concurring.

This case illustrates once again why the various branches of local government should work together in a spirit of cooperation to accomplish the greatest good for the taxpayers without needless waste of public funds. See *Atlanta Bd. of Education v. City of Atlanta*, 262 Ga. 15 (413 SE2d 716) (1992); *City of Atlanta v. Collins*, 262 Ga. 261 (417 SE2d 141) (1992); and *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991). Here, the taxes which support both parties are derived from the same source, the citizens of DeKalb

---

[3] At a time when, nationally, from 1992 to 1996, 1,620,000 young people between the ages of 16 and 24 will fail to complete high school; 3,600,000 infants will be born into poverty; 7,911,532 public school students will be suspended; and 599,076 children under age 18 will be arrested for alcohol-related offenses, another 359,600 for drug offenses, and another 338,292 for violent crimes, see Marian Wright Edelman, The Measure of Our Success, pp. 85-86 (1992), Georgia's school districts cannot afford to expend their resources on endeavors not focused on curbing the current national human deficit.

County. Upon these same citizens is cast the burden of attorney fees and expenses of litigation of both parties in this action. In my 25 years of local government representation in rural northwest Georgia, I observed a strong spirit of cooperation between school boards, cities, counties and authorities, with the ultimate beneficiary of such cooperation being the local citizens. Government in metropolitan areas would do well to emulate such cooperation.

DECIDED FEBRUARY 28, 1994.

*Weekes & Candler, Gary M. Sams, Joyner & Burnette, Mark G. Burnette,* for appellants.
    *Robert E. Wilson, District Attorney, Johnson & Montgomery, Albert S. Johnson,* for appellee.