S02A0356. WELLS et al. v. CITY OF BALDWIN et al.

(565 SE2d 439)

HUNSTEIN, Justice.

The City of Baldwin is located partly in Banks County and partly in Habersham County. In 1980 a majority of Banks County voters chose to impose a local option sales tax ("LOST") within their "special district," i.e., the geographical area whose boundaries are conterminous with those of Banks County. See Article IX, Section II, Paragraph VI, Ga. Const. of 1983; see also OCGA § 48-8-81. Both Banks County and the City of Baldwin, as a qualified municipality located partially within the special district, passed resolutions providing for the tax. See OCGA § 48-8-86. The City of Baldwin uniformly assessed the property values and tax liability of its Banks and Habersham County residents; computed the millage rate for ad valorem taxation of tangible property within the City limits; and then, after ascertaining the revenues produced by the Banks County LOST, reduced or "rolled back" the millage for those City residents whose properties were within the special district subject to the tax, namely the "Baldwin in Banks" residents. This rollback reduced the millage rate of the Baldwin in Banks residents to zero. The surplus of the Banks County LOST was then applied to the millage rate assessed against the Baldwin in Habersham residents, reducing but not eliminating their tax liability.

The City of Baldwin followed this procedure from 1980 until 1999 when the City enacted Ordinance 991129, pursuant to which

the Banks County LOST was applied to roll back the millage rate for all City residents, regardless of their county of residence. Harriett Wells and other Baldwin in Banks homeowners, confronted with an ad valorem property tax liability for the first time in nearly two decades, filed suit challenging the ordinance. The trial court, construing OCGA § 48-8-91, upheld the constitutionality of the City's ordinance and the Baldwin in Banks homeowners appeal. We reverse the trial court because the plain language of the Joint County and Municipal Sales and Use Tax Act (the Act), OCGA § 48-8-66 et seq., limits the application of the rollback provision in OCGA § 48-8-91 to those residents of the special district where the tax is imposed and this construction of the Act, which is consistent with the special district clause, Art. IX, Sec. II, Par. VI, does not violate the uniformity clause of the State Constitution, Art. VII, Sec. I, Par. III.

Art. IX, Sec. II, Par. VI, provides that

> special districts may be created for the provision of local government services *within* such districts; and fees, assessments, and taxes may be levied and collected *within* such district to pay, wholly or partially, the cost of providing such services *therein* and to construct and maintain facilities therefor.

(Emphasis supplied.) "[T]he Special District Clause of the constitution limits the expenditure of revenue derived from the special district tax to the provision of local governmental services *within the special district*. [Cit.]" (Emphasis supplied.) *Youngblood v. State of Ga.*, 259 Ga. 864, 865 (2) (388 SE2d 671) (1990).

The Legislature expressly relied upon the constitutional authority granted in the special district clause when it created the special districts for purposes of the Joint County and Municipal Sales and Use Tax Act. OCGA § 48-8-81. The Act created 159 special districts within the State, with the geographical boundary of each county corresponding to and conterminous with the geographical boundary of one of the 159 special districts. Id. The Legislature then authorized each special district, consisting of one county and any qualified municipalities located wholly or partially within that county, to impose a joint sales and use tax to be levied by the governing authorities of the political subdivisions within the special district. OCGA § 48-8-82. However, the Legislature provided, as a "condition precedent for authority to levy" the tax, that

> the county whose geographical boundary is conterminous with that of the special district and each qualified municipality therein receiving any proceeds of the tax shall adjust

annually the millage rate for ad valorem taxation of tangible property within such political subdivisions as provided in this subsection. The governing authority of each such political subdivision shall compute the millage rate necessary to produce revenue from taxation of tangible property in its respective political subdivision which . . . would provide revenues sufficient to defray the expenses of the political subdivision for the year. The millage rate so ascertained shall then be reduced by a millage rate [according to the calculation in the statute].

OCGA § 48-8-91 (a).

Language throughout the Act reflects the Legislature's understanding that there are municipalities which are located only "partially" within special districts in the State. E.g., OCGA §§ 48-8-82, 48-8-84, 48-8-85, 48-8-86, 48-8-87.[1] The Act contains provisions which limit application of the Act only to that percentage of a qualified municipality which lies within a special district. See OCGA § 48-8-89.3 (d), which provides that "[f]or the purpose of all population based calculations under this Code section, only that portion of the population of a qualified municipality which is located within the special district shall be computed." See also OCGA §§ 48-8-89 (b), 48-8-89.3 (b) (2). Accord *City of Atlanta v. Collins*, 262 Ga. 261 (2) (417 SE2d 141) (1992) (under the Act, only the portion of a city's population that resides within the special district may be included when calculating a qualified municipality's pro rata share of the LOST proceeds in that district).

The City of Baldwin argues that its ordinance is mandated by the uniformity clause, which provides, in pertinent part, that "all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Art. VII, Sec. I, Par. III (a). While the uniformity clause may be violated by improper discrimination in the imposition of taxes, *Decatur Tax Payers League v. Adams*, 236 Ga. 871, 874 (226 SE2d 69) (1976), that is not the situation here. Under OCGA § 48-8-91 (a), the City must uniformly compute the millage rate applicable to all residents necessary to produce revenue sufficient to defray its annual expenses. Only after this calculation is completed may the City assess the impact of the LOST revenue it has received from Banks County on its millage rate and reduce that rate to reflect the revenue it obtained from Banks County. The difference in tax liability does not result from a lack of uniformity but from the fact that Baldwin in Banks residents can

---

[1] During oral argument, counsel for the City of Baldwin represented that there are 18 municipalities in Georgia that are located within two or more counties.

utilize the Banks County LOST revenue proceeds to "pay for" their share of the City's annual expenses, which is the practical result that occurs when the millage rate imposed on their properties is rolled back to reflect the revenue the City receives on behalf of its Banks County residents.[2] There is thus no improper discrimination on the part of the City since the reduction to reflect the special district LOST revenue is authorized by the special district clause, Article IX, Section II, Paragraph VI, which specifically provides for the levy of taxes to pay the cost of providing services within the limited territory of the special district. Accord *Youngblood v. State of Ga.*, supra, 259 Ga. at 865 (2).

To construe the Act in the manner proposed by the City would mandate that taxpayers in one special tax district subsidize the tax payments of residents outside that tax district. Such a construction would violate Art. IX, Sec. II, Par. VI which requires that taxes levied and collected within a special district be used to pay the cost of providing local government services within that district. The Act is consonant with this constitutional mandate in that nothing in the Act indicates an intention by the Legislature to require application of the LOST revenue so as to gratuitously reduce the millage rate applied to residents outside the special district.

The trial court's reliance upon *Nielubowicz v. Chatham County*, 252 Ga. 330 (312 SE2d 802) (1984) and *Martin v. Ellis*, 242 Ga. 340 (249 SE2d 23) (1978) is misplaced. In *Nielubowicz*, we rejected the argument that the revenue produced by the Act applies only to unincorporated areas of the special district and found that it was applicable to all tangible property within the special district. In *Martin*, this Court held unconstitutional a "differential rollback" provision in a predecessor statute to OCGA § 48-8-91 because it authorized a county to distinguish between residents based upon whether they resided in incorporated or unincorporated areas of the same county. Neither case involved a dispute over a multi-county municipality's application of revenue from one county's LOST; thus, neither case supports a contrary result here.

We accordingly find that City of Baldwin Ordinance 991129 violated the Act by authorizing the City to use the City's pro rata share of revenue generated by Banks County LOST to roll back the millage rate for the City's Habersham County residents. The trial court erred by upholding the validity of the ordinance.

*Judgment reversed. All the Justices concur.*

---

[2] While Habersham County residents also chose to enact a LOST under the Act, it is uncontroverted that they opted to apply that tax for certain educational purposes and thus Baldwin in Habersham residents do not have a comparable source of revenue to apply to the reduction of the millage rate imposed upon them by the City.

232

*Caudell & Hotard, B. Chan Hotard,* for appellants.
*Hulsey, Oliver & Mahar, R. David Syfan,* for appellees.