Billy W. DUKE, Plaintiff-Appellant,

v.

Fob JAMES, Governor of the State of Alabama; Charles Graddick, Attorney General of the State of Alabama; et al., Defendants-Appellees.

No. 81-7970.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1983.

John D. Stuebing, Joseph E. Carr, IV, Mobile, Ala., for plaintiff-appellant.

Susan Beth Farmer, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

This appeal is from the October 29, 1981, judgment of the United States District Court for the Southern District of Alabama dismissing without prejudice appellant's cause of action under 42 U.S.C. § 1983 (1976). Judgment was entered in accordance with the magistrate's recommendation that appellees' motion to dismiss be granted because appellant failed to exhaust his state administrative remedies and upon the ground of *Pullman*[1] abstention. In light of the intervening decision by the U.S. Supreme Court in *Patsy v. Board of Regents of Florida*,[2] it is now established that appellant was not required to exhaust his state administrative remedies before proceeding in federal court under 42 U.S.C. § 1983.

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

Thus, *Pullman* abstention forms the only ground supporting the district court's judgment. Because we feel that the magistrate and the district court should not have abstained in this case, we reverse and we remand the case to the district court for further proceedings.

## I.

In July 1976, appellant Billy W. Duke (Duke)[3] was convicted of grand larceny, a felony under Alabama law. Pursuant to his rehabilitation program, Duke was enrolled in a state vocational institute where he was schooled in the barbering trade. After his release, Duke applied for and received an apprentice license from the State of Alabama to practice barbering. He has been continuously licensed by the state as an apprentice barber since 1979.

Alabama maintains a dual-licensing system for barbers, whereby, in certain areas, a county license may be required in addition to a state license.[4] In order to practice barbering in Mobile County, a barber must be licensed by the Barbers' Commission for the County of Mobile (Barbers' Commission) in addition to maintaining a state license. On August 26, 1980, Duke applied to the Barbers' Commission to take the apprentice examination,[5] which is a prerequisite to receiving an apprentice license in that county.[6] Duke's "Application for Apprentice Examination" was denied.

Duke filed a timely appeal[7] for an administrative hearing before the Barbers'

3. This action was filed as a class action by Billy W. Duke (Duke) on his own behalf and on behalf of a class consisting of all persons who have applied, are applying, or will in the future apply for a license to practice barbering as an apprentice barber in Mobile County, Alabama. The action was dismissed prior to certification of the class. Thus, the class has not yet been certified. Appellant will, therefore, be referred to as "Duke."

4. 1961 Ala.Acts 940, 941–44.

5. Section 9 of the act, 1961 Ala.Acts at 946–47, provides in pertinent part:

"Section 9. EXAMINATIONS—

"(a) The Board shall conduct examinations for applicants for licenses to practice as barbers and as apprentices * * *. * * * *Licenses* to barbers or apprentices *shall be issued* by the Board *to any applicant who shall have passed the examination* therefor, by making an average grade of not less than 70% and who shall possess the other qualifications required by this Act." (Emphasis supplied.)

6. Sections 5 and 6 of the act, 1961 Ala.Acts at 944–45, set forth the qualifications for apprentices and barbers. Those sections provide:

"Section 5. APPRENTICE QUALIFICATIONS—

"(a) Any person *shall* be qualified to receive a license as an apprentice barber provided:

"1. He is at least sixteen and one-half (16½) years of age and is of good moral character and temperate habits; and

"2. He has graduated from an approved school or college of barbering, which school has been approved or licensed under the provisions of this Act; and

"3. He passes a satisfactory examination conducted by the Barbers' Commission to determine his fitness to practice as an apprentice; and

"4. He has an 8th grade education or equivalent thereof; and

"5. He has obtained a medical certificate as required by this Act; and

"6. He has paid the required fee specified by this Act.

"(b) An applicant for a license who fails to satisfactorily complete an examination conducted by the Commission may apply for re-examination at any future meeting of the Commission. Upon making application therefor and payment of the required fee, said applicant shall be permitted to again take said examination.

"(c) No apprentice may independently practice barbering, but he may, as an apprentice, do any and all of the acts constituting the practice of barbering under the immediate personal supervision of a licensed barber. [Emphasis supplied.]

"Section 6. BARBER QUALIFICATIONS— Any person having made application for a barber license *shall* be qualified to receive such license to practice as a barber provided:

"(a) He is qualified under the provisions of Section 5 of this Act; and

"(b) He has practiced as an apprentice barber for a period of eighteen (18) months on a full time basis under the immediate personal supervision of a licensed barber; and

"(c) He has passed a satisfactory examination conducted by the Board to determine his fitness to practice barbering; and

"(d) He has paid the required fee specified in this Act." (Emphasis supplied.)

7. 1961 Ala.Acts at 949–50 provides a mechanism for appeals to the commission.

Commission of Mobile County. Duke was informed by letter dated October 6, 1980, that his request that he be allowed to take the written examination was again denied. No reasons were given in the letter for the denial.[8]

Instead of pursuing his administrative appeal remedies under section 17 of the statute,[9] Duke filed suit in federal district court under 42 U.S.C. § 1983.[10] Duke alleged that sections 5, 16, and 17 of the statute, the state statutory scheme for licensing and regulating barbers, and the policies of the Barbers' Commission which allow denial of an application for a license by an ex-felon violate the equal protection and due process clauses of the fourteenth amendment.[11]

In lieu of an answer, appellees (Barbers' Commission)[12] filed a motion to dismiss the action. The case was referred to a magistrate. On October 8, 1981, the magistrate filed his recommendation that the motion to dismiss be granted.

That recommendation was based on two grounds: exhaustion and abstention. The magistrate found that the appeal procedures set forth in section 17 of the statute were administrative and not judicial. Following the general rule that state administrative remedies must be exhausted, the magistrate recommended dismissal. The magistrate, however, did not stop there. He went on, *sua sponte*, to recommend abstention under *Railroad Commission of Texas v. Pullman Co.*[13] The magistrate found section 16 of the statute,[14] allowing the Commission to refuse to issue a license for conviction of a felony, to be ambiguous. Finding a likelihood that clarification of

---

**8.** The statute provides several potential grounds for denial of a license. 1961 Ala.Acts at 949 provides in pertinent part:

"SECTION 16. GROUNDS FOR SUSPENSION, REVOCATION OR REFUSAL TO ISSUE A RENEWED LICENSE—The Board is hereby vested with the *power* and authority *to refuse to issue* or renew as well as the power to suspend or revoke *any license for* any one or a combination of the following causes:

"(a) *Conviction of a felony.* * * *" (Emphasis supplied.)

**9.** Section 17, 1961 Ala.Acts at 949–50, governs appeals from an adverse action of the Barbers' Commission under section 16. It provides in pertinent part:

"Section 17. HEARINGS

"No action in refusing to issue or renew or in suspending or revoking a license for any of the causes enumerated in the foregoing Section shall be taken until the accused has been furnished with a statement of the specific charges against him and notice of the time and place of hearing thereof. * * *

    \*    \*    \*    \*    \*    \*

"*Within ten days after the conclusion of the hearing, the Board shall render its decision in writing.* Copies of the decision shall be delivered to all parties at interest.

    \*    \*    \*    \*    \*    \*

"Any person aggrieved by the decision or ruling of the Board, as provided for in the preceding Section, may appeal from such action to the Circuit Court of such county within ten days after such final determination of the Board, by filing written notice thereof with the Board. Upon any such appeal a trial shall be de novo." (Emphasis supplied.)

**10.** 42 U.S.C. § 1983 (Supp. V 1981) provides in pertinent part:

"§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, * * * of any State * * *, subjects, or causes to be subjected, any citizen of the United States * * * to the *deprivation of any rights,* privileges, or immunities *secured by the Constitution* and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis supplied.)

**11.** U.S. Const. amend. XIV, § 1, provides in pertinent part:

"SECTION 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without *due process* of law; nor deny to any person within its jurisdiction the *equal protection* of the laws." (Emphasis supplied.)

**12.** Duke named as appellees the governor and the attorney general of the State of Alabama, the Barbers' Commission for the County of Mobile, and the commissioners, both individually and in their capacities on the commission. For convenience the appellees will be referred to collectively as "Barbers' Commission."

**13.** *Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

**14.** 1961 Ala.Acts at 949. *See supra* note 8.

state law would moot or substantially alter the federal question, the magistrate recommended dismissal without prejudice on that additional ground. On October 29, 1981, the district court entered judgment upon the recommendation of the magistrate, dismissing without prejudice Duke's cause of action on both grounds. Duke appealed.

Subsequently, on June 21, 1982, the U.S. Supreme Court decided *Patsy v. Board of Regents of Florida*.[15] *Patsy* involved an action under section 1983 for denial of employment opportunities solely on the basis of race and sex discrimination. Patsy had failed to exhaust her available state administrative remedies before proceeding in federal court. The Supreme Court held that exhaustion of state administrative remedies is *not* a prerequisite to an action under section 1983. Relying on the legislative history of 42 U.S.C. §§ 1983 and 1997e, the Court stated that the policies of comity, fostering federal-state relations, and encouraging development of the record could not justify a judicially created exhaustion requirement, unless such was consistent with congressional intent.

In view of the intervening *Patsy* holding, the Barbers' Commission concedes that Duke is not required to exhaust his state administrative remedies before proceeding under section 1983. *Patsy* is controlling and disposes of the issue of exhaustion in this appeal.

## II.

Thus, disposition of this case turns on one issue: whether the district court erred in dismissing without prejudice Duke's action on the ground of *Pullman* abstention.

Duke contends that the district court erred in holding that this case presents an unsettled issue of state law which would moot or substantially alter the federal constitutional question. Duke also contends that even were abstention proper, the district court should have stayed rather than dismissed the case. The Barbers' Commission rebuts by pointing out that abstention involves the discretionary exercise of a court's equity power. Thus, the Barbers' Commission argues, the standard of review is abuse of discretion.[16] The Barbers' Commission contends that this case involves an unsettled question of Alabama law, the clarification of which would substantially alter the federal constitutional question and, thus, abstention was proper.

## III.

The abstention doctrine reflects the tension between the obligation of federal courts to decide cases that are properly within their jurisdiction and the obligation to avoid adjudicating constitutional questions that are not essential to the disposition of a case. Considerations of comity indicate that conflict between the federal and state systems should be minimized. To that end, in *Pullman*,[17] Justice Frankfurter spoke of the propriety of restraint in the exercise of jurisdiction "because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." In spite of Justice Marshall's admonition in *Cohens v. Virginia*[18] that a federal court has "no

---

**15.** *Patsy*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172.

**16.** The precedents in this area, particularly those from the Supreme Court, speak of the discretion of the court in abstaining. Yet, many of these cases appear to treat abstention as a pure question of law. No clear articulation of the standard of review emerges from this body of precedent. We need not decide, in this appeal, precisely what the standard of review is. The magistrate's opinion reflects errors of law in that the factors that must be considered in determining whether to abstain

were not considered. The state law question involved in this appeal is not fairly susceptible to an avoiding construction and therefore abstention is improper. Thus, a critical prerequisite of abstention is lacking. Additionally, stay rather than dismissal of Duke's action would have been the correct procedure, were abstention proper. We reverse in view of these errors of law.

**17.** *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645.

**18.** *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821).

more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given," the abstention doctrine is well-established law.[19]

It is improper, however, to view abstention as a tool merely to extract from the state courts an alternative state law ground for the judgment. Abstention is not intended to serve in this manner when state law is clear. Similarly, if the state court will merely apply federal constitutional law, then the state construction will *not* moot or modify the constitutional question. Abstention should not be used as a lever to force the state courts to do the federal courts' work. Such would thwart Duke's choice of the alternative federal forum, specifically provided by Congress.

Congress has deliberately afforded the section 1983 plaintiff an alternative federal forum.[20] It is not for the courts to withdraw that jurisdiction which Congress has expressly granted under section 1983 where such a withdrawal is contrary to the purpose of Congress in extending that alternative forum. In this regard, the *Pullman* doctrine is narrow and is tightly circumscribed. A federal court must grapple with difficult constitutional questions that confront it squarely. The abstention doctrine is an exception to this rule, to be exercised only in *special* or "*exceptional*" circumstances.[21]

*Pullman* abstention requires two elements: (1) an unsettled question of state law and (2) that the question be dispositive of the case and would avoid, or substantially modify, the constitutional question. If such an issue is present, it is then incumbent on the court to exercise discretion in deciding whether to abstain. A number of factors should inform that decision.[22] Factors arguing against abstention include delay,[23] cost, doubt as to the adequacy of state procedures for having the state law question resolved, the existence of factual disputes, and the fact that the case has already been in litigation for a long time. Factors which might favor abstention include the availability of "easy and ample means"[24] for determining the state law question, the existence of a pending state court action that may resolve the issue, or the availability of a certification procedure, whereby the federal court can secure an expeditious answer.

An uncertain question of state law is critical to the decision to abstain. The test of uncertainty is typically said to be that the state law must be *fairly subject* to an avoiding construction.[25] Most *Pullman*-type cases involve a constitutional challenge to a state statute, as does Duke's claim. Construction of a state statute normally requires reference to the challenged statutory provision, the act of which it is a part, the legislative history of the enact-

**19.** *Cf. Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (in which Justice Black, writing for a divided court, extended the principles of abstention to entirely abdicate federal jurisdiction in favor of a comprehensive state regulatory scheme).

**20.** *Patsy,* 457 U.S. at 513–15, 102 S.Ct. at 2566–67.

**21.** *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Lindsey v. Normet,* 405 U.S. 56, 62 n. 5, 92 S.Ct. 862, 868 n. 5, 31 L.Ed.2d 36 (1972); *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967); *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964).

**22.** *See* 1A Moore's Federal Practice ¶ 0.203; 17 Federal Practice and Procedure § 4342.

**23.** Where important interests are at stake, the additional deprivation that may occur while waiting for a determination of the state law question may become quite significant.

**24.** *Pullman,* 312 U.S. at 501, 61 S.Ct. at 645.

**25.** While it has not grappled expressly with the standard of uncertainty, the Supreme Court has variously articulated the test as "susceptible," *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), and as "fairly subject" to an avoiding construction, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). At least one commentator feels that the difference may be significant. 1A Moore's Federal Practice ¶ 0.203[1].

ment, and any other reliable, relevant statutory materials.

The district court held that section 16 of the statute presents an unsettled question of state law:[26] whether section 16 of the statute allows the Barbers' Commission to deny a license solely on the ground that the applicant is an ex-felon, in spite of the language of section 5 which provides that a license *shall* be granted to *all* qualified applicants. Unfortunately, construction of the statute is hampered by the fact that Alabama does not maintain written legislative histories of its enactments. Additionally, the statute has not yet been construed by the courts of the State of Alabama. Thus, whether the statute is ambiguous or uncertain must be determined largely from the language of the statute itself.

The Barbers' Commission conceded at oral argument that an ex-felon may be of good moral character and thus satisfy section 5. Conflict with section 16 is, therefore, established. No avoiding construction is offered by the parties. Nor can we reasonably conclude that such a construction exists. Section 5 of the statute provides general qualifications for apprentice barbers. Section 16 specifically vests the Barbers' Commission with the power to deny a license for any of the enumerated reasons. Section 5 merely provides that a person shall be qualified, not that a license shall be issued to all qualified applicants. Thus, section 5 and section 16 are not inconsistent. The Barbers' Commission is specifically empowered to deny a license to an ex-felon despite the fact that the ex-felon may otherwise be qualified under section 5.

■ We conclude that sections 5 and 16 are consistent. The Barbers' Commission is specifically empowered to deny a license for conviction of a felony. Thus, a potential conflict with the federal constitution under the fourteenth amendment is established. On the basis of the record before us, we

conclude that section 16 is not fairly subject to a state law construction that would avoid or substantially modify the federal constitutional question. Thus abstention was not proper.

## IV.

The magistrate and the district court should not have abstained in this case. Section 16 is not fairly subject to an avoiding construction under Alabama law. Thus, abstention is not proper. We reverse the judgment of the district court and remand the case to the district court for further proceedings on Duke's federal constitutional claims.

REVERSED and REMANDED.

---

**26.** The due process question was not examined by the magistrate nor is it addressed squarely by Duke. Section 17 does not expressly require a statement of reasons for the denial. It merely specifies that the denial must be in

writing. The section 17 question was not passed on by the district court and, thus, forms no basis for its decision to abstain. Accordingly, we need not rule on that question.