[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2001
THOMAS K. KAHN
CLERK

No. 01-10806

D. C. Docket No. 00-00273-CV-TWT-1

TIBERIO P. DEJULIO,
EVA C. GALAMBOS,

Plaintiffs-Appellants,

versus

STATE OF GEORGIA,
ROY E. BARNES, in his official capacity
as the Governor of Georgia, et al.

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(December 21, 2001)**

Before BIRCH, COX and ALARCON*, Circuit Judges.

_____
*Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

BIRCH, Circuit Judge:

This appeal presents the following issues: (1) whether the procedures by which the Georgia General Assembly considers "local legislation" violate the principle of "one person, one vote," and (2) whether the changes in internal rules and procedures by which the General Assembly enacts local legislation are subject to the preclearance requirement of the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., as amended. As to the first issue, the district court determined that, although the members of the Georgia General Assembly's local delegations were popularly elected, they did not engage in governmental functions, and, therefore, the "one person, one vote" requirement does not apply. Under the circumstances of this case, the district court should have invoked Pullman[1] abstention concerning this issue. Regarding the second issue, we affirm the court's determination that the preclearance requirements of the Voting Rights Act did not apply to the changes in the General Assembly. Accordingly, we REVERSE in part and AFFIRM in part.

## I. BACKGROUND

The legislative power of the state is vested in the General Assembly, which

---

[1]The first abstention doctrine was created by the Supreme Court in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643 (1941).

consists of a House of Representatives and a Senate.[2] Ga. Const., art. III, § 1, ¶ 1.

Both the House and Senate have adopted their own rules to govern organization

and basic rules of operation.[3] Local legislation, which is legislation that applies to

a specific city, county, or special district, comprises a large part of the bills

introduced and enacted by the General Assembly each year.[4] Because of this

volume, the House and the Senate have adopted local delegations for the

consideration of local legislation. Each county, municipality, or other jurisdiction

has a local delegation and any legislator whose district encompasses territory

within a specific city or county is a member of the local delegation for that entity.

The local delegations make recommendations to the House and Senate

standing committees, which then recommend local legislation to the entire body[5].

A local bill must receive the requisite majority from the local delegation to be

---

[2] Hereinafter, the Georgia House of Representatives and Georgia Senate will be referred to respectively as "House" and "Senate."

[3] The district court took judicial notice of the 2000 Rules of the Georgia House of Representatives and the 2000 Rules of the Georgia Senate. DeJulio v. Ga., 127 F. Supp.2d 1274, 1284 (N.D. Ga. 2001).

[4] Local legislation is introduced to change city boundaries, create local authorities, or make other changes that apply only to the particular political subdivision named in a bill. Approximately one-third of all legislation enacted during the General Assembly's 2000 session was local legislation. DeJulio, 127 F. Supp.2d at 1280. In 1999, local legislation constituted 52.5% of all enacted legislation. Id.

[5] The standing committees are the State Planning and Community Affairs Committee in the House and the State and Local Government Operations Committee in the Senate. Id. at 1280-81.

reported favorably out of the standing committees with a "do pass" recommendation. Absent local delegation rules filed in the House Standing Committee, unanimous support from the local delegation is required for the committee to report the legislation favorably to the full House with a "do pass" recommendation.[6] Similarly, Senate Rule 187(u) provides that local legislation must be approved by a majority of the senators who represent the locality in question. If the local delegation is equally divided on the proposed legislation, however, the committee then considers the legislation on its own merits and can report it with either a "do pass" or "do not pass" recommendation.

If local legislation has received the requisite number of signatures of representatives and senators whose districts lie partially or wholly within the locality which the legislation affects, it is ordinarily passed on an uncontested basis as a matter of local courtesy.[7] The underlying assumption of local courtesy is that the bill affects only a certain city or county, and, therefore, representatives and senators of other districts should defer to that local delegation's judgment. Local

---

[6] House Rule 11 provides that a majority of the representatives whose districts lie within a political subdivision may file with the State Planning and Community Affairs Committee their own local rules for consideration of local legislation.

[7] Both the House and Senate permit numerous local bills to be voted on by the full body through a "local consent calendar" that contains uncontested local legislation. DeJulio, 127 F. Supp.2d at 1281.

courtesy is a custom, however, and is not provided for in either the House or Senate rules. Should a member of the House or Senate choose to challenge local legislation on the floor, local courtesy is not enforced.[8]

It is undisputed that these challenges seldom happen. The district court noted that "in practice, the local delegations propose all local legislation; and this legislation typically, but not always, is 'rubber-stamped' by the full General Assembly without further discussion or debate." DeJulio, 127 F. Supp.2d at 1281. For local legislation to become law, however, the Governor must sign it within forty days from the end of the legislative session. Id.

Plaintiffs-appellants, Tiberio P. DeJulio and Eva C. Galambos (hereinafter "Voters"), filed a voting rights action pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and an action to enforce the provisions of the Fourteenth Amendment and the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., as amended. Voters alleged that the current procedures for enactment of local legislation of the General Assembly constituted a violation of the "one person, one vote" standard.[9] Additionally, Voters argued that the changes

---

[8] Senate Rule 113(e) provides that three senators, only one of whose district must lie within the political subdivision directly affected, may have a particular local bill removed from the local consent calendar by objecting to it in writing.

[9] Voters' argument is based on the undisputed population data for Georgia's 159 counties broken down according to the House and Senate Districts located in those counties. Voters

in the General Assembly's internal rules are subject to the preclearance requirement of Section 5 of the Voting Rights Act. DeJulio, 127 F. Supp.2d at 1282. The district court granted summary judgment to the appellees and determined that: (1) the "one person, one vote" requirement did not apply to the General Assembly's local legislative delegations, and (2) the changes in internal rules and procedures by which the General Assembly enacted local legislation were not subject to the Voting Rights Act's preclearance requirements. Id. at 1302. Voters appeal this judgment on both issues.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, apply the same standard as the district court, and review all facts and reasonable inferences in the light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgement is appropriate when "the pleadings, depositions and answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553 (1986)(quoting Fed. R. Civ. P.

---

allege that a House or Senate member with constituents in the county have one vote on local legislation while another House or Senate member with fewer constituents in the county also has one vote on local legislation affecting the county.

6

56(c)).

A. *"One Person, One Vote"*

Because this issue is better determined by the state, the district court should have invoked Pullman abstention.[10]  Under Pullman abstention, a federal court will defer to "state court resolution of underlying issues of state law."  Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181 (1965).  By abstaining in such cases, federal courts "avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication."  Id. at 534, 85 S.Ct. at 1182.

Two criteria have been established for application of the Pullman doctrine: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented.  Duke v. James, 713 F.2d 1506, 1510 (11th Cir. 1983).  A question of state law is "unsettled" if it is "*fairly subject* to an avoiding construction," which means that the state court can render a fair interpretation of state law that comports with the Constitution.   Id. at 1510.

_____

[10] We are raising abstention sua sponte, Bellotti v. Baird, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 2864 n.10 (1976), and have determined de novo the propriety of abstention in this case.  We join other circuits in this approach.  See Columbia Basin Apartment Ass'n. v. City of Pasco, 268 F.3d 791 (9th Cir. 2001); Robinson v. City of Omaha, Nebraska, 866 F.2d 1042 (8th Cir. 1989); Grimes v. Crown Life Ins. Co., 857 F.2d 699 (10th Cir. 1988); Waldron v. McAfee, 723 F.3d 1348 (7th Cir. 1983).

7

In considering abstention, we must take into account the nature of the controversy and the importance of the right allegedly impaired. Siegel v. Lepore, 234 F.3d 1163, 1174 (11th Cir. 2000)(en banc)(per curiam). Voters in this case allege that the current procedures for enacting local legislation violate the "one person, one vote" requirement of the Fourteenth Amendment. Specifically, Voters contend that their vote is diluted compared to other Fulton County voters whose representatives and senators represent only a portion of Fulton County, but who have an equal vote in Fulton County local delegations.

An alleged denial of voting rights does not automatically trigger federal involvement. Duncan v. Poythress, 657 F.2d 691, 697 (5th Cir. Unit B Sept. 1981).[11] The abstention doctrines are not considered rules of law. Rather, they are applied with the exercise of sound discretion based of the facts of each case. Hill v. City of El Paso, Texas, 437 F.2d 352, 356 (5th Cir. 1971).

In this case, we risk interference with valid state procedures and unnecessary federal constitutional adjudication. "How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself." Highland Farms Dairy v. Agnew, 300 U.S. 608, 612, 57 S.Ct.

_____

[11] Additionally, "[j]ust as an alleged denial of voting rights does not preclude federal abstention, so the absence of pending state proceedings does not mandate federal adjudication." Ducan, 657 F.2d at 697.

8

549, 551 (1937). The Georgia Constitution authorizes the General Assembly to create its own rules of procedure. Both the House and Senate have adopted internal procedures for the consideration of local legislation to assist the General Assembly in handling vast quantities of legislation. Whether the local delegations perform governmental functions, which subjects them to the "one person, one vote" requirement, is a fundamental matter of state law that is most appropriate for state court determination. Because the relief sought by Voters regarding the validity of the House and Senate rules may be available under Georgia law, we conclude that the district court should not have decided the merits of the federal constitutional claims presented in this complaint.

The dissent states that no unsettled state law questions are presented in this case. However, the district court never considered deferral to the Georgia courts, affording these courts the first opportunity to address what is purely and peculiarly a state legislative voting procedure. We respectfully suggest that at this juncture it is speculation to conclude that the Georgia courts are not capable of resolving this dispute. Such a resolution on the basis of Georgia law would pretermit the intervention of the federal courts into an area of state sovereignty.

While this is not a traditional "voting dispute" — it is once removed from the familiar dispute — it is, nevertheless manifestly with in the aegis of that

9

concern. As we have observed:

> Principles of federalism limit the power of federal courts to intervene in state elections, however. The Constitution leaves "the conduct of state elections to the states." Gamza v. Aguirre, 619 F.2d 449, 453 (5th Cir.1980). We have cautioned before against excessive entanglement of federal courts in state elections. "The very nature of the federal union contemplates separate functions for the states. If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute...." Id.

Burton v. State of Georgia, 953 F.2d 1266, 1268 (11th Cir. 1992). As I understand the law, "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." Curry v. Baker, 802 F.2d 1302, 1314 (11th Cir. 1986).

B. *Section 5 of the Voting Rights Act*

Section 5 of the Voting Rights Act requires a jurisdiction covered by the Act to obtain either judicial or administrative preclearance before implementing a new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964."[12] 42 U.S.C. § 1973c (Voting Rights Act of 1965 § 5). If a covered jurisdiction fails to seek preclearance for a proposed voting-law change, a private

---

[12] Georgia is a "covered jurisdiction," as are its "political subunits." 28 C.F.R. Part 1 & § 51.6.

10

party injured by that change can bring an action for a declaratory judgement and injunctive relief by alleging that the change is within the scope of Section 5 and that it requires preclearance.  Id.

In this case, Voters, without identifying specific rule changes, argue that the changes in Rules of the General Assembly are subject to preclearance. The preclearance requirements of the Voting Rights Act apply to legislative internal rule changes in only the most limited of circumstances: (1) changes to the manner of voting; (2) changes to candidacy requirements and qualifications; (3) changes to the composition of the electorate; and (4) changes that affect the creation or abolition of an elective office.  Presley v. Etowah County Commission, 502 U.S. 491, 493, 112 S.Ct. 820, 823 (1992).  In Presley, the Court held that changes in the decision-making authority of elected officials are not changes in voting practices or procedures that require preclearance pursuant to Section 5 of the Voting Rights Act.  Id. at 503, 112 S.Ct. at 829.  The change "concerns only the internal operations of an elected body and the distribution of power among officials, and, thus, has no direct relation to, or impact on, voting."  Id. at 492, 112 S.Ct. at 823. Hence, the district court correctly determined that preclearance requirements did not apply to changes in internal rules and procedures by which the General Assembly enacted

local legislation applicable to a specific city, county, or district.

### III. CONCLUSION

The district court  noted, "[i]t...is not the province of the federal judiciary in the name of the equal protection of the laws to interfere in such internal political matters as how a state legislature seeks to reach consensus on local legislation." DeJulio, 127 F. Supp.2d at 1302.  As we have explained, the district court should have abstained from deciding whether the "one person, one vote" requirement applied to local legislative delegations.  Furthermore, the district court correctly decided  that procedural changes to the internal Rules of the General Assembly are not subject to the preclearance requirement of the Voting Rights Act.

Accordingly, we **REVERSE** in part and **AFFIRM** in part the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

COX, Circuit Judge, concurring in part and dissenting in part:

I agree that summary judgment was appropriate on the Voting Rights Act claims. However, I do not agree that the district court should have invoked *Pullman* abstention on the federal "one person, one vote" equal protection claims. Since, in my view, there are no unsettled questions of state law presented in this case, I respectfully dissent from Part II.A. of the court's opinion.

The voters filed a five count complaint in the United States District Court for the Northern District of Georgia. Counts One, Two, and Three allege violations of the Equal Protection Clause of the United States Constitution. (R.2-12 at 9-47.) Counts Four and Five allege violations of the Voting Rights Act, 42 U.S.C. § 1973. (R.2-12 at 47-51.) There are no state law claims.

The State of Georgia vigorously attacked the suit and raised several defenses. However, throughout the litigation, Georgia never suggested that abstention was appropriate and never once cited *Pullman*.

On summary judgment, the district court found that the voters had standing, *see Dejulio v. Ga.*, 127 F. Supp. 2d 1274, 1290-91 (N.D. Ga. 2001), that this case did not implicate the political question doctrine, *see id.* at 1292, and that some parties were improper, *see id.* at 1292-94. The district court also concluded that the local delegations did not violate the "one person, one vote" principle because

13

the local delegations have no final authority, *see id.* at 1297, and that internal changes in the local legislation process were not subject to preclearance under the Voting Rights Act, *see id.* at 1301. But never in its lengthy and thorough opinion did the district court mention abstention.

On appeal, neither party argued for abstention in its brief. Indeed, *Pullman* abstention was first mentioned at oral argument in a question posed by this court.

Since *Pullman* abstention was never raised or argued, I would not bother to raise it sua sponte in this case. However, once *Pullman* abstention is raised, it should quickly be rejected since this case turns solely on an unavoidable constitutional question. To put it plainly, there is no unsettled question of state law presented in this case. Moreover, there is no interpretation of state law that would allow us to avoid the constitutional question presented in this case. Thus, *Pullman* abstention is inappropriate.

*Pullman* abstention is an "extraordinary and narrow exception" to the exercise of federal jurisdiction, available only in "exceptional circumstances." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 187, 79 S. Ct. 1060, 1063 (1959). In this circuit, *Pullman* abstention is appropriate only when both of the following circumstances are present: (1) the case presents an unsettled question of state law; and (2) the question of state law is dispositive of the case or would

14

materially alter the constitutional question presented. *See Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (en banc). Even when these circumstances are present, *Pullman* abstention is still not required; it remains discretionary, to be invoked only "when the question of state law can be fairly interpreted to avoid adjudication of the constitutional question." *Id.*

The complaint in this case contains five counts that raise federal claims and questions of federal law. There are no claims under Georgia law.[1] Though the lack of state law claims does not end the abstention inquiry, *see Reid v. Bd. of Educ.*, 453 F.2d 238, 242 n.7 (2d Cir. 1971), the lack of unsettled state law questions does. In this case, there are no unsettled state law questions. The Georgia General Assembly created the local delegations through its own internal procedures, and there is nothing unclear about these procedures or their application. Simply put, there is no Georgia law that the Georgia courts could construe to avoid adjudicating the "one person, one vote" claims raised in this case.

---

[1]The only conceivable state claim would be an equal protection claim under the Georgia Constitution. *See* Ga. Const. art. 1, § 1, ¶ 2, cl. 2 ("No person shall be denied the equal protection of the laws."). Under Georgia law, the equal protection clause of the Georgia Constitution is considered identical to the equal protection clause of the Fourteenth Amendment. *See Nodvin v. State Bar of Ga.*, 544 S.E.2d 142, 145 (Ga. 2001) ("Because the protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. 1, Sec. 1, Par. 2, of the Georgia Constitution of 1983, we apply them as one.") Since these clauses are mirror images, we should not ignore a federal claim under one just because a state claim is available under the other. *See Examining Bd. of Eng'rs v. Flores de Otero*, 426 U.S. 572, 598, 96 S. Ct. 2264, 2279 (1976); *Fields v. Rockdale County*, 785 F.2d 1558, 1561 (11th Cir. 1986); *Henley v. Herring*, 779 F.2d 1553, 1556 (11th Cir. 1986).

15

The success of the "one person, one vote" claims turns, as both parties and the majority acknowledge, on whether Georgia's local delegations perform "governmental functions." The resolution of this "governmental functions" issue ultimately depends on federal equal protection law, not on Georgia law. *See Ramsbottom Co. v. Bass/Zebulon Rds. Neighborhood Ass'n*, 546 S.E.2d 778, 779-80 (Ga. 2001); *Rich v. State*, 227 S.E.2d 761, 766-67 (Ga. 1976); *Grimes v. Clark*, 173 S.E.2d 686, 689-91 (Ga. 1970) (each applying only federal principles in its "one person, one vote" governmental functions analysis). We are, therefore, squarely confronted with a constitutional question whose adjudication cannot be avoided by interpreting state law.

Instead of pointing to an unsettled question of state law, the majority states that Georgia's courts should have the first opportunity to address its legislative procedures. But this statement flies in the face of *Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001), where we explicitly stated that *Pullman* abstention should not be invoked so that state courts can "take the first crack at the federal constitutional issues." *Id.* at 1287. I do not doubt that Georgia's courts are fully capable of resolving the constitutional question in this case. But I believe, as the court in *Pittman* believed, that "[a] federal court must grapple with difficult constitutional

16

questions that confront it squarely." *Pittman*, 267 F.3d at 1286. We should address the constitutional question presented in this case.

While adjudicating this case might interfere with Georgia's political procedures, it would not be the first time that a federal court has interfered with an unconstitutional state political procedure. *See, e.g., Rice v. Cayetano*, 528 U.S. 495, 120 S. Ct. 1044 (2000) (striking down voting requirements for the Office of Hawaiian Affairs); *Bd. of Estimate v. Morris*, 489 U.S. 688, 109 S. Ct. 1433 (1989) (holding New York City borough presidents' automatic board vote unconstitutional); *Hadley v. Junior Coll. Dist.*, 397 U.S. 50, 90 S. Ct. 791, (1970) (finding unequal distribution of junior college trustees unconstitutional); *Driskell v. Edwards*, 518 F.2d 890, 893 (5th Cir. 1975) (allowing federal court inquiry into the structure of Lousiana's constitutional convention). Such is the duty imposed on us by the United States Constitution, *see* U.S. Const. art. III, § 2; U.S. Const. art. VI, cl. 2, and the United States Congress, *see* 28 U.S.C. § 1331 (1993). In this case, a group of voters claims that the "one person, one vote" principle of the Equal Protection Clause of the United States Constitution has been violated. A federal court should adjudicate these federal constitutional claims.